*391
 
 By the Court.
 

 The Public Institutional Building Authority, by action instituted in this court, seeks the issuance of a writ of mandamus to compel George M. Neffner, secretary of state of the state of Ohio, to attest certain bonds in the total amount of $4,250,000 heretofore approved and authorized by the relator. The proceeds of the sale of such bonds are to be used to construct an institution for the housing and medical care of feeble-minded people at Apple Creek, Ohio.
 

 Issue was made by a general demurrer to the petition.
 

 This is the second time a proposed issue of bonds for a similar purpose has been challenged by a like proceeding in this court. In the case of
 
 State, ex rel. Public Institutional Building Authority,
 
 v.
 
 Griffith, Secy. of State,
 
 135 Ohio St., 604, 22 N. E. (2d), 200, this court had before it a proposed issue of bonds in the sum of $7,500,000, the proceeds of which were to be used in constructing, equipping and improving certain hospitals and institutional buildings for the care of patients afflicted with mental diseases. It was there held that the proposed bonds created an indebtedness of the state within the meaning of the debt limitations prescribed by Sections 1 and 3, Article VIII of the state Constitution.
 

 The proceedings now before the court have evidently been prepared with a view of meeting the objections pointed out by the court in the previous case. The vital need for such institution has been urged. Such necessity may well be conceded. However, the question before the court in this proceeding is not one of policy but of power. The question of policy is a legislative function. The court considers only the legal aspects of the petition and ascertains whether the Public Institutional Building Authority has the power under the law to issue these bonds.
 

 The petition sets forth in full the resolution authorizing and providing for the issuance of the bonds by
 
 *392
 
 the Public Institutional Building Authority, and also the rental agreement entered into by the Department of Public Welfare and the Public Institutional Building Authority for the rental and occupancy of the proposed institution by the Department of Public Welfare. The resolution of the building authority authorizing the issuance of bonds contains the following statement:
 

 “Section
 
 3.
 
 That said bonds shall be and constitute negotiable instruments under the negotiable instruments law of Ohio but nevertheless they shall not be or constitute general obligations of the authority or of the state of Ohio or any agency or department thereof; shall not be or be construed to be unconditional promises to pay and the holders thereof shall be entitled to look for the payment thereof and the interest thereon only to the special fund hereinafter provided for the payment of such bonds and the interest thereon.”
 

 The bonds contain the following statement: “The bonds of said authorized issue as may be outstanding from time to time constitute obligations only for the fulfillment of which the revenues of said Public Institutional Building Authority, derived from said institution, are pledged, and payment of said bond's, together with the interest thereon are secured by a lien upon the revenues, rentals and receipts of said Public Institutional Building Authority received for the use and occupancy of said institution. Neither the payment of the principal of this bond or any part thereof, nor the interest thereon or any part thereof constitutes an indebtedness of the state of Ohio nor a charge on the credit or taxing power of said state, nor an indebtedness of the Public Institutional Building Authority nor a charge on its credit or general revenues.”
 

 And further these proposed bonds contain the following language: “That the revenues, rentals and receipts of the authority, received under an agreement with the Department of Public Welfare for the use and occupancy of said institution or otherwise received or
 
 *393
 
 derived by the authority from any use of said-institution, have been pledged to and will be set aside into a special fund created and identified as the ‘Public Institutional Building Authority Apple Creek Bevenue Fund’ for the purpose of paying the reasonable cost of the maintenance and repair of said institution and the reasonable expenses of the authority attributable to said institution, and the interest on this bond and the issue of which it is a part as the same becomes due, and fully discharging said bonds at. or prior to the maturity thereof.”
 

 In addition to the above, the resolution adopted by the authority contains the following language:
 

 “Section 7. The gross revenues derived by the authority from said agreement with the Department of Public Welfare or otherwise accruing to or derived by the authority from said institution so to be constructed at Apple Creek from the proceeds of said bonds, shall be set aside and deposited as received into a. separate and special fund to be known as the Public Institutional Building Authority Apple Creek Bevenue Fund, which shall be kept as a special fund and shall not be considered as moneys in the treasury of the state. Said fund shall be applied to the following purposes in the following order of priority and not otherwise:
 

 “First: To the payment of the reasonable cost of the maintenance and repair of said institution and the reasonable expenses of the authority attributable to said institution.
 

 “Second: To the payments into the Public Institutional Building Authority Apple Creek Bond Fund, mentioned in Section 8 hereof.
 

 “Third: As to any surplus revenues remaining, to be disposed of as the authority may from time to time determine consistent with law to be for the best interest of the authority and the Department of Public Welfare and of the state of Ohio, and without prejudice to the generality of the foregoing, including the use of
 
 *394
 
 any such surplus for the call of any or all of said bonds for redemption and the use, if the authority so determines, of any such surplus for the Department of Public Welfare.”
 

 The.petition also sets forth in detail a rental agreement entered into between the Department of Public Welfare and relator for the use, occupancy and maintenance of this hospital building at Apple Creek, Ohio. This agreement, after setting forth the necessity for additional facilities for the care of the feeble-minded agrees that the Public Institutional Building Authority may have possession for a period ending the 31st day of December 1964 of certain nonproductive and non-income-producing land now owned by the state of Ohio and located near Apple Creek, upon which land the authority agrees to construct a hospital. The Department of Public Welfare in this rental agreement agrees to use this institution and to occupy it for the term set forth as a hospital for the feeble-minded, and agrees to assign to the hospital such patients as are available, up to its capacity, whose support and maintenance are, by law, required to be paid for by persons or counties charged with their support. The rental agreement provides as follows:
 

 “5.
 
 The authority shall fix the rate of the rental for the use and occupancy of said institution for the period commencing upon the date that the same is completed and ready for occupancy. Said rental shall initially be fixed and thereafter fixed, and altered, from time to time, by the authority, in such amount as it may determine to be necessary for the purpose of providing for the payment of the expense of the authority with relation to said institution, the construction, improvement, repair and maintenance of said institution, and the payment of the principal of said bonds as they mature under said resolution, or earlier, if called for redemption and the payment of the interest on said bonds, and to fulfill the terms and provisions- of the
 
 *395
 
 agreements contained herein and in said resolution. Such rentals shall be fixed pursuant to the provisions of General Code Sections 2332-4 and 2332-6. The amount of such rental is to be paid by the department from, and only from the fees received by the department under Sections 2332-3a, 1815-4 and 1815-12 of the General Code of Ohio, for the support and maintenance of patients and inmates housed in said institution. The department agrees to charge and collect for the support of said patients and inmates in said institution, to the extent it may legally do so, such amounts as are sufficient in the aggregate to provide available funds to pay the authority the amount of rent as may be so fixed from time to time by the authority.
 

 “Provided, however, that the obligation of the department to pay said rental shall not be a general or unconditional obligation of the department or of the state of Ohio, but the same shall be payable only and solely from said fees.
 

 “Section 6. The department pledges to the authority for the payment of the amount of rentals so fixed, said fees so received by it under said Sections 2332-3a, 1815-4 and 1815-12 of the General Code of Ohio.
 

 “7. The department shall pay or cause to be paid as collected, all of said fees received by it or for its account for the support and maintenance of patients and inmates housed in said institution, until the amounts so paid in each month shall aggregate one-twelfth (1/12) of such sum as may be equal to the annual rental as fixed by the authority and in effect during such month, to the Treasurer of State, as custodian to be held by him in a special fund separate and distinct from the funds of the state of Ohio * *
 

 The effect of the proposed plan would be the construction of the institutional building on the land of the state leased by it to the building authority, the possession of such building being retained by the au
 
 *396
 
 thority until the termination of the lease. During such period, the building authority has the right to fix the rentals for such building, and to alter the same from time to time, in such amount as it determines to be necessary for the payment of the expense of tire authority with relation to the institution,
 
 i. e.,
 
 the construction, improvement, repair and maintenance thereof, and the retirement of the bonds as they mature.
 

 Do the resolutions and the agreement, as set forth in part above, create an obligation which constitutes a debt of the state of Ohio? Section 2332-2, General Code, provides in part as follows: “The Public Institutional Building Authority is hereby created for the purpose of providing for the construction, equipment and improvement of buildings for the use of benevolent, penal and reformatory state institutions * # ®.”
 

 Section 2332-4, General Code, sets forth the powers and the purpose of the authority. An examination of these powers as enumerated clearly indicates that the primary and paramount purpose of the Public Institur tional Building Authority is to construct buildings on state-owned property without pledging the credit of the state of Ohio. That was clearly the purpose and object of its creation.
 

 Section 1, Article VII of the Ohio Constitution, expressly provides as follows:
 

 “Institutions for the benefit of the insane, blind, and deaf and dumb, shall always be fostered and supported by the state; and be subject to such regulations as may be prescribed by the General Assembly.”
 

 The duty and responsibility of the state is thus clearly prescribed. Nowhere in the statute is there any provision that the operation of such an institution shall be undertaken by the Public Institutional Building Authority. Instead, it clearly appears in Section 1890-100, General Code, that the Department
 
 *397
 
 of Public Welfare alone has this duty. That section provides in part:
 

 “The Department of Public Welfare shall have the power and authority, also, to provide for the custody, supervision, control, care, maintenance and training of feeble-minded persons committed to its custody and care, and to pay, in the manner provided by law, the expense thereof out of any funds available therefor.”
 

 It is beyond argument that without specific statutory authority the Public Institutional Building Authority cannot undertake the duties of caring for the feeble-minded patients. This is recognized' by provisions of Section 2332-3», General Code, which authorizes the Department of Public Welfare to enter into an agreement with the Public Institutional Building Authority for the use, occupancy and maintenance of such hospital buildings for a period not exceeding 25 years and “to pledge and semi-annually pay to the order of the Public Institutional Building Authority the required sums for such use, occupancy and maintenance from all or any part of its available sources of income.”
 

 By this section, the Department of Public Welfare is authorized to rent these proposed buildings. The Department of Public Welfare has contracted to pay over to the Public Institutional Building Authority all of the fees that it receives for the support and maintenance of patients and inmates housed in this institution up to the amount of fixed rentals. As has been pointed out, the authority has no duty and cannot undertake the maintenance and care of the patients. That is specifically the duty of the Department of Public Welfare. And when in the resolution authorizing the issuance of bonds the authority agreed to apply these funds received from the Department of Public Welfare to the payment of the reasonable “cost of maintenance and repair ■ of said institution and the reasonable expenses of the authority attributable to said institution,”'the word maintenance cannot mean
 
 *398
 
 the medical care, feeding and other expenses of caring for the patient.
 

 The only reasonable construction to be given the word “maintenance” is that it refers to the actual physical care of the buildings themselves. Therefore, the question is squarely presented whether the Department of Public "Welfare can be authorized to pay the entire sum which it receives for the care of patients to another state department to be expended in its entirety for the construction and upkeep of a building, leaving the entire cost of the medical treatment, care and food and other expenses of the support and maintenance of patients to be paid from other state funds. The obligation of the state to its wards is one which must be met from its general revenues, and any reimbursement it may receive by virtue of the provisions of Section 1815-12, General Code, is paid to the Treasurer of State. That section requires that the treasurer of each county pay to the Treasurer of State the amount chargeable against such county for the preceding six months for all inmates not otherwise supported. If the money paid in reimbursement by counties and others may be diverted to the payment of the bonds in question, leaving the state with the clear duty to care for its wards from general revenues secured from taxation, the state will have certainly incurred a debt, whether it be direct or contingent. An obligation in a definite amount would be incurred under the rental contract, for the Department of Public Welfare assures the institutional building authority that the state will house 3,000 patients, or as many as are possibly available, in such institution at a rental fixed by the authority and changeable at its instance for the life of the bonds, which is tantamount to an agreement to pay a fixed sum annually just as if the state had agreed to pay the interest and the accruing principal installments by warrant drawn upon the treasurer.
 

 
 *399
 
 Where substantial funds which have heretofore gone into the general funds of the state treasury are pledged to liquidate such bonds, thereby requiring the state to seek and secure revenues otherwise in order to meet its obligations to care for and support its wards, then the obligation of those bonds does become the ultimate obligation of the state. To hold otherwise would result in an evasion of the constitutional limitations.
 

 The demurrer to the petition is sustained and, relator not' desiring to plead further, a writ of mandamus is denied.
 

 Writ denied.
 

 Weygandt, C. J., Zimmerman, Turner, Williams, Matthias and Hart, JJ., concur.
 

 Day, J., dissents.