(No. 33186.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* THE ILLINOIS TOLL HIGHWAY COMMISSION *et al.,* Appellees.

*Opinion filed May 24, 1954.*

GEORGE P. COUTRAKON, State's Attorney, and THOMAS W. HOOPES, both of Springfield, for appellant.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN L. DAVIDSON, JR., and WERNER W. SCHROEDER, both of Chicago, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This is an appeal from the circuit court of Sangamon County involving the State Toll Highway Commission Act of this State. Through the State's Attorney of said county *quo warranto* and injunction actions were simultaneously instituted against the Illinois State Toll Highway Commission and its members, in substance challenging the validity of the statute which became effective upon the Governor's approval July 13, 1953. The issues being the same the trial court entered an order consolidating the causes. Respondents filed motions to strike the two actions and the trial court granted said motions. Upon the plaintiff electing to stand on the initial pleadings the trial court held the act constitutional and entered a decree and judgment of dismissal in the two actions.

1. Plaintiff contends the act violates section 5 of article V of our State constitution in that section 3 of the act makes the Governor an *ex-officio* member of the commission and section 11 of the act requires approval by the Governor of plans and location of highways before bonds are issued.

2. Plaintiff contends the act violates section 26 of article IV of the State constitution in that section 27 of the act gives consent of the State to suits against the commission and section 14 of the act authorizes bondholders to sue the commission.

3. Plaintiff contends the act violates section 18 of article IV of the State constitution in that bonds may be issued by the commission without a referendum, subject to approval of preliminary plans and location of roads by the Governor under section 11.

4. Plaintiff contends the act violates section 17 of article IV of the State constitution in that section 20 of the act provides no appropriation shall be necessary to 'withdraw funds from the treasury and such funds shall be considered always appropriated for the purpose of disbursement.

5. Plaintiff contends the act violates section 20 of article IV of the State constitution in that section 9(d) of the act gives the commission power to construct grade separations for railroads at its own cost. Plaintiff further objects to appropriations made by the Sixty-eighth General Assembly for payment of salaries and preliminary expenses of the commission.

6. Plaintiff contends the act violates section 22 of article IV of the State constitution in that section 17 of the act provides that toll roads do not become part of the State highway system until all bonds are paid and only the commission has authority to establish tolls and operate toll roads.

7. Plaintiff contends the act violates section 12 of article IX of the State constitution concerning debt limitations.

8. Plaintiff contends the act violates due process of law and section 19 of article II of the State constitution. Plaintiff further contends the act violates article III of the State constitution in that section 28 of the act provides all determinations made by the commission with the approval of the Governer shall be conclusive and not subject to review by any court or administrative agency of the State, thereby granting to the commission judicial power as well as legislative authority.

9. Plaintiff contends the act violates section 26 of article IV of the State constitution in that section 7 of the act gives the commission power of eminent domain over public lands, highways, parkways, parks, playgrounds, all of which are held by the State or agency of the State.

10. Plaintiff contends the act violates section 1 of article V of the State constitution in that subsections 6(b), (d) and (e) of the act give the commission power to appoint assistant Attorneys General and retain special counsel to perform duties which can only legally be performed by the Attorney General or assistants appointed by him.

The act in question contains twenty-nine sections and is cited as paragraph 314a26 to 314a54, inclusive, chapter 121, Illinois Revised Statutes, 1953. The foregoing constitutional objections shall herein be dealt with in order.

The first objection deals with the fact that section 3 of the act makes the Governor an *ex-officio* member of the commission and that section 11 requires his approval of plans and location of highways before the issuance of bonds. We see no merit in the contention that there is a violation of section 5 of article V of the State constitution, which provides that neither the Governor nor any of the constitutional executive officers shall be eligible to any other office during the period for which he shall have been elected. On more than one occasion the legislature has seen fit to impose additional duties upon constitutional officials other than those expressly mentioned in the State constitution. We see in such legislation the creation of no other office but merely the imposition of additional duties. We have so declared in *People ex rel. Graham* v. *Inglis,* 161 Ill. 256, and *People ex rel. Gullett* v. *McCullough,* 254 Ill. 9.

Section 14 and section 27(a) authorize suits against the commission by bondholders while section 27(b) authorizes any person to bring suit against the commission for the recovery of damages "for injury to his person or property caused by any act of the commission or by any act of any of its officers, agents or employees done under its direction." These sections are said to violate article IV, section 26, of the Illinois constitution, which provides that

the State of Illinois shall never be made a defendant in any court of law or equity.

It is recognized by our decisions that this constitutional provision does not forbid actions against State officials in cases where the State would not be directly and adversely affected by the relief sought, and that such officials may under those circumstances be compelled to perform a duty required by the constitution or by statute, or restrained from acting beyond their authority or from acting under color of an invalid statute. (See *People ex rel. First National Bank* v. *Kingery,* 369 Ill. 289; *Burke* v. *Snively,* 208 Ill. 328.) This statute, however, purports to allow an action against the commission itself, and its validity in this respect therefore turns on whether the commission is to be regarded as a mere department of the State government or as an independent legal entity. It is clear that an action brought against an ordinary department of the State government is sometimes regarded as the equivalent of one in which the nominal defendant is the State of Illinois. (See *Monroe* v. *Collins,* 393 Ill. 553; *People ex rel. Greening* v. *Green,* 382 Ill. 577; *Posinski* v. *Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 376 Ill. 346; *Schwing* v. *Miles,* 367 Ill. 436; *Noorman* v. *Department of Public Works,* 366 Ill. 216; but cf. *Moline Tool Co.* v. *Department of Revenue,* 410 Ill. 35.) It is equally clear, however, that some public bodies, although closely related to the State government, have been regarded as subject to suit despite the constitutional provision. (See *Board of Trustees* v. *Bruner,* 175 Ill. 307; *People ex rel. Board of Trustees* v. *Barrett,* 382 Ill. 321; *Loomis* v. *Keehn,* 400 Ill. 337; cf. *Minear* v. *State Board of Agriculture,* 259 Ill. 549.) Which of these two classes a given public body falls into depends upon the degree of administrative and financial autonomy which it possesses.

The Toll Highway Commission is described in the act as "an instrumentality and an administrative agency" of

the State, and it is undeniable that in many respects it is intimately associated with the regular organs of government. Its functions are ones traditionally performed by the State. Two of its members are officers of the State government, while the others are appointed by the Governor, and may be removed by him. The commission's choice of sites for toll highways, as well as its preliminary estimates of costs, must be approved by the Governor. The Attorney General serves as its legal representative, and controls the selection and performance of the commission's legal staff. Furthermore, while the commission may acquire property in its own name, the toll highways which it constructs are to become a part of the regular State highway system whenever the indebtedness incident to their construction has been liquidated. We note also that the legislature has made initial appropriations of $64,000 for the salaries of the commissioners as well as $436,000 for the performance of the commission's duties. See Laws of 1953, p. 591.

On the other hand, the financial structure of the commission is otherwise largely independent of the regular State government. The funds which it obtains from the sale of bonds and from tolls are segregated and may be used only for toll highway purposes. Conversely, the State assumes no liability upon the bonds issued by the commission or upon any other contractual obligations which it incurs. Whatever effect a recovery of damages against the commission would have upon general, tax-derived revenues of the State is limited to the remote right which is given the State to receive any surplus remaining when the commission is ultimately dissolved.

Organizations having as close a relation to the State as this have been held by us to be subject to suit. The University of Illinois was regarded as suable despite the fact that its property was regarded as that of the State. (See *Board of Trustees* v. *Bruner,* 175 Ill. 307; cf. *Thomas*

v. *Board of Trustees,* 71 Ill. 310; *People ex rel. Board of Trustees* v. *Barrett,* 382 Ill. 321.) And in *Loomis* v. *Keehn,* 400 Ill. 337, we held the State Armory Board to be an independent entity subject to suit, despite the fact that its members were appointed by the Governor and that its function was to acquire buildings for lease to the State. The appellant cites *People ex rel. Greening* v. *Green,* 382 Ill. 577, as authority for the proposition that the Toll Highway Commission is merely a department of the State. The agency involved in that case was the State Public Building Authority, whose functions were to acquire buildings to be leased to the State for office space. In that case, as here, the authority could issue bonds upon which the State was declared not to be liable. The opinion of the court does not indicate for what reason it found the authority to be a department of the State, and, in view of the similarity of the facts, the decision must be considered as having been seriously limited by the subsequent decision in *Loomis* v. *Keehn.*

The suability of commissions such as this has not received a uniform answer in other jurisdictions, except for a general agreement that where the liability of the commission would be satisfied from State funds, the commission will be regarded as the alter ego of the State. See *State Highway Com.* v. *Utah Construction Co.* 278 U.S. 194; *State Highway Com.* v. *Kansas City Bridge Co.* 81 Fed. 2d 689; *United Contracting Co.* v. *Duby,* 134 Ore. 1, 292 Pac. 309.

The West Virginia turnpike commission was held subject to suit in *Guaranty Trust Co.* v. *West Virginia Turnpike Com.* 109 Fed. Supp. 286. The act there involved closely resembles ours, but differs in that the powers of the commission were less subject to control by departments of the State government. As is the case under the Illinois act, the bonds issued by the commission were declared not to be obligations of the State. The Pennsylvania commission has also been held subject to suit. (See *Hunkin-*

*Conkey Construction Co.* v. *Pennsylvania Turnpike Com.* 34 Fed. Supp. 26; *Darby* v. *L. G. De Felice & Son,* 94 Fed. Supp. 535; *Pennsylvania Turnpike Com.* v. *Welsh,* 188 Fed. 2d 447.) The commission there was subject to considerably more supervision by regular departments of the government than is the Illinois commission. As with the West Virginia act, however, the State assumed no obligations of the commission as its own. The principal decision holding to the contrary is *Fowler* v. *California Toll-Bridge Authority,* 128 Fed. 2d 549. The facts there, however, are significantly different. Virtually the entire direction of the acquisition of bridges, their construction and operation, as well as the control over withdrawals from the authority's funds, was vested in the department of public works, and the entire membership of the authority was composed of State officers serving without salary. See also *Broadwater-Missouri Water Users' Assoc.* v. *Montana Power Co.* 139 Fed. 2d 998.

The multiplicity of factors which the courts have considered in reaching a decision of this question makes it impracticable to extract a simple rule which will fit every situation. The factor entitled to most weight, in our opinion, is that under no circumstances can the general funds of the State be reached in order to satisfy an obligation of the commission. That factor, together with the largely independent control of the commission over the construction and maintenance of the proposed toll roads, permits it to be regarded as an independent entity so far as subjection to suit is concerned. The extent to which the commission would or would not be immune to actual liability in any particular action is of course not now before us. Our decision is simply that the constitution does not forbid it to be made a party defendant.

The third objection urges that section 18 of article IV of the State constitution requiring a referendum on State indebtedness is violated by section 14 of the act, which

authorizes the issuance of revenue bonds payable solely from income derived from operation of toll highways. It is clear from a reading of the act that the bonds are not an obligation of the State by reason of the express language to such effect. All indebtedness incurred by the commission and all legal obligations assumed by it are payable only out of such revenues as are described in section 20 of the act. This modern method of financing is founded basically upon the proposition that the State assumes no obligation and the holder of the bond is duly notified of this fact by the express language of the statute and the form of the bond issued. It is this well-known method of modern financing that has proved itself to be of much help and beneficence in public works. As stated in *State ex rel. Allen* v. *Ferguson*, 155 Ohio St. 26, 97 N.E. 2d 660, 667, "It may be observed that, under the turnpike act, the revenues, which are to be the source of money for payment of the bonds, are not revenues from payments by the state as in the case of *State ex rel. Public Institutional Bldg. Authority* v. *Griffith, Secy. of State, supra,* and *State ex rel. Public Institutional Bldg. Authority* v. *Neffer, Secy. of State,* 137 Ohio St. 390, 30 N.E. 2d 705, where this court held that revenue bonds, payable from such revenues, were, in effect, debts of the state." The act gives no authority to the commission to create a debt against the State of Illinois. We have upheld the issuance of similar revenue bonds in the Superhighway act of 1943 in *People ex rel. Curren* v. *Schommer,* 392 Ill. 17.

The fourth objection complains that section 20 of the act, providing for no appropriation prior to withdrawal of funds, violates section 17 of article IV of the State constitution, which in substance requires appropriations before withdrawal from the State Treasury. It is to be noted that the section complained of provides that moneys withdrawn from the State Treasury special fund shall be considered always appropriated for the purposes of disburse-

ments and are to be paid out and disbursed only as provided in the act, which prohibits appropriations or diversions to any other use or purpose than specified. This, in effect, is an appropriation by the General Assembly. The income receipts from the operation of the contemplated toll highways are not a tax but a toll. It was held in *Green v. Black,* 352 Ill. 623, that the General Assembly's control of State revenues and finances is restricted only by our constitution and that the General Assembly may provide as to revenues other than State taxes and fees of State officers, that when such revenues are collected they may be appropriated to a use specified in the act. It was then declared that such is, in effect, an appropriation of such revenues to the purpose so specified. ·

The fifth contention suggested by plaintiff addresses itself to section 9(d) of the act. This subparagraph gives the commission power to construct grade separations for railroads at its own cost. Section 20 of article IV of the State constitution, among other things, prevents the State from assuming debts or liabilities of any corporation, association or individual. There can be no doubt of the service to the general public in the creation of grade separations. It is a well known aid to the public safety and we see nothing within the complained-of paragraph that violates the cited section of the constitution. The foreseen constitutional evils are prevented, as it is manifest that the action when taken would clearly come within the police powers of the State. However, it may well be, under the act, that the commission might make agreements with railroads, cities or other corporations for the division of costs in the construction of grade separations. The commission is entitled to avail itself of the benefits of section 58 of the Public Utilities Act. Ill. Rev. Stat. 1953, chap. 111⅔, par. 62.

Under the same objection it is complained that moneys have been appropriated by the Sixty-eighth General As-

sembly for the payment of salaries. We have upheld a similar legislative appropriation to the Chicago Transit Authority in *People* v. *Chicago Transit Authority,* 392 Ill. 77. This court has often upheld appropriations of moneys to private corporations or persons so long as the purpose for which it is expended is for public and not private benefit. (*Loomis* v. *Keehn,* 400 Ill. 337.) This court cannot fail to recognize the great need presently existing for new and improved highways to relieve the great burden of present roads and the attendant hazards and risks. No one can seriously doubt that the building of new and improved toll highways under modern engineering methods is in the public interest.

Section 22 of article IV of the State constitution is the subject of plaintiff's sixth objection. Briefly stated it prohibits the General Assembly from passing a special law. Plaintiff contends that section 17 of the act providing that the toll highways shall become a part of the State highway system when all bond and interest obligations have been met contravenes the State constitutional injunction. We fail to see merit in such a contention. The specifications in plaintiff's brief attempt to reach the result that the act is special legislation. This is a pure attempt to overlook the general purpose and scheme of the act and is wholly in contempt of its context. The fact that the legislature did not see fit to make specific directions in respect to the laying out and vacating of roads and various other details illustrates its understanding that such problems are far better delegated to other persons or bodies and foresees the exercise of sound discretion and judgment by the governmental authority when the problems are met. It is such legislation that makes for efficient government. Section 6(f) of the act gives to the commission power to construct, relocate, operate, regulate and maintain a system of toll highways, and section 7(a) empowers the commission to cause to be prepared detailed plans, specifica-

tions and estimates for such highways. We see nothing in the statute indicating this law to be a special one for the laying out or altering of roads and highways. The act is very general in its nature. Even the vacation of specific streets and alleys has been held by this court to be a constitutional exercise of authority by the legislature, or to be constitutionally delegated to local municipalities. *People ex rel. Franchere* v. *City of Chicago,* 321 Ill. 466.

The seventh objection is founded on the theory that the act does not provide that contract obligations and judgments in condemnations suits shall be paid solely from moneys derived from the sale of bonds and revenue received. Section 12 of article IX of the constitution is then pointed to. Since this section of the constitution applies only to counties, cities, townships, school districts or other municipal corporations, it is obvious that the debt limitation provision therein contained is not applicable. The only source of payment of any of the contracts or obligations of the commission is its gross income from money received from the sale of bonds, and income from tolls, licenses, gifts, donations, concessions, fees and rentals. Section 2(f) of the act defines the word "cost" as embracing the cost of construction as well as every other imaginable type of cost of a toll highway system. Section 14 empowers the commission to issue bonds to finance in whole or in part the cost of the acquisition, purchase, construction, reconstruction, improvement, relocation, alteration or extension of any toll highway, and the expenses incident to the *exercise of the power* conferred upon it in relation to the construction of a toll highway. It is therefore clear that condemnation judgments and all other contract obligations are expressly provided for and contemplated in this section.

It is claimed in plaintiff's eighth objection that because specific and narrow directions are not laid down by the legislature there is a lack of due process and an unlawful

delegation of power. Because section 28 of the act provides that determinations made by the commission in the exercise of the discretionary powers given it shall be conclusive and not subject to review, the further claim is made that both the due-process clause and article III of the State constitution are violated. We cannot agree with the contention that the constitutional doctrine of separation of powers is violated. The claim of plaintiff that the wording of section 2(d) of the act, to the effect that the toll highways shall be designed and constructed in the best professional judgment of the engineering staff,. amounts to an uncontrolled discretion in the engineering staff with nothing left to the judgment of the members of the commission is without force. We do not construe the clear import of the act so unreasonably. The ultimate and final judgments and determinations are those of the commission, although necessarily based upon judgments and decisions of engineers, lawyers and experts in other fields.

Again, and as before stated, we believe the delegation to the commission is valid—it is not a legislative function which is being exercised, it is administrative and ministerial. In *People ex rel. Curren* v. *Schommer,* broad power delegated to highway commissions to plan and construct roads was held not to be an illegal delegation of legislative authority. See, also, *Loomis* v. *Keehn,* at 344-5. The same problem was dealt with in *Department of Public Works and Buildings* v. *Lanter,* 413 Ill. 581, where the Freeways Act was under attack, and we there stated, at page 589: "It is true that the standards prescribed in the present statute to govern the Department in the designation of freeways and the regulation of access rights are expressed in general terms—'when the safety and convenience of highway traffic will be promoted and the public interest subserved thereby.' But it is also true that the host of varied and unforeseeable conditions which may exist or arise along the State's thousands of miles of through traffic

highways make greater particularity impossible. The constitutional doctrine of separation of powers was not intended to confine the legislature to the alternatives of complete inaction or the imposition of rigidly inflexible laws which would distort rather than promote its objective. When it is necessary, the legislature may commit to others the responsibility for the accomplishment of the details of its expressed purpose. The scope of permissible delegation must be measured in terms of the complexity and diversity of the conditions which will be encountered in the enforcement of the statute. So it has been said almost from the outset that the legislature may authorize others to do things which it might properly, but cannot understandingly or advantageously, do itself."

Plaintiff asserts that section 19 of article II of the State constitution, which provides that every person shall find a ready remedy in the law for injuries and wrongs received, is violated by the last sentence of section 28 of the act making the commission's determinations in the area of its discretionary powers conclusive and not subject to review. We construe this section as being limited to *discretionary* matters as long as the administrative body exercises its powers within the confines of its statutory authority. Recourse to the courts is not denied where bad faith, fraud, corruption, manifest oppression or a clear abuse of discretion enters into the commission's determinations; the presence of any of these conditions will give ready access to the courts. The determinations of the commission can constitutionally be made conclusive so long as none of the above evils are present. In reality this statutory language is no more than an express declaration of a rule of law long in existence in this State. (See *Mowry* v. *Department of Public Works and Buildings,* 345 Ill. 121, and *Boyden* v. *Department of Public Works and Buildings,* 349 Ill. 363.) We have consistently followed the policy of adopting such construction of a statute as

will uphold the validity of the statute rather than one which would render it unconstitutional. (*People* v. *Adduci,* 412 Ill. 621.) Nor can it be contended that a property owner will not be heard on the necessity for taking, as the eminent domain proceeding provides such hearing.

The ninth objection of plaintiff argues that section 7(b) of the act purports to authorize suits to acquire land held by State agencies, contrary to section 26 of article IV of the State constitution. A reasonable construction of the act supports the conclusion that condemnation proceedings against the State are not authorized by the act. The legislative power to transfer property from one public use to another seems to be sustained by the authorities. Property devoted to the public use may be taken by authority of the legislature for a different public use, even if the earlier enterprise is thereby wholly destroyed. (18 Am. Jur. 719, Eminent Domain, sec. 93.) This doctrine was supported in *People ex rel. Branson* v. *Walsh,* 96 Ill. 232, and *City of Chicago* v. *Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co.* 242 Ill. 30. These cases also indicate the power lodged in the legislature to transfer jurisdiction of public lands from one State agency to another without condemnation. To the same effect are *Mitchell* v. *Lowden,* 288 Ill. 327, and *People ex rel. Curren* v. *Schommer.*

The fact that a different method of financing is employed does not change the character of the toll highways and properties under this act. It is a public use of public property for public benefit. It is controlled and administered by a public agency and when all bonds are retired the highways become a part of the State general highways system. In its wisdom the legislature made the Governor and Director of Public Works and Buildings *ex-officio* members of the commission, foreseeing the necessity of liaison and co-operation between other State highways and toll highways. A similar objection was made in the New Jersey Turnpike case in *City of Newark* v. *New Jersey Turnpike*

*Authority,* 81 Atl. 2d 705. The court there held public lands of the city could be taken for turnpike purposes declaring: "The city further asserts that under section 14 of the act the Authority cannot take public lands now devoted by the City to the public use without the consent of its Board of Commissioners and that the plenary powers of the City under the Home Rule Act (R.S. 40:67-1 *et seq.,* N.J.S.A.) to regulate and control its streets have not been extinguished or impaired by the Turnpike Authority Act. These assertions are so devoid of merit as to approach the specious and may be summarily dealt with. First, these assertions are utterly incompatible with the right of eminent domain granted the Authority by section 5(j) of the act, which specifically provides that the Authority may acquire by eminent domain any lands and other property 'including public lands, parks, playgrounds, reservations, highways or parkways, owned by or in which any county, city, borough, town, township, village, or other political subdivision of the State of New Jersey has any right, title or interest, or parts thereof or rights therein  *  *  *.' A clearer specification of the extent of the authority's power to condemn the city's property would be difficult to draft. Second, the idea that any and every municipality along the route of the proposed turnpike could effectively veto either its location or the manner of its construction by a withholding of consent is in direct conflict with the very concept of a turnpike designed to serve the best interests of the entire state and not merely those of particular localities. Third, section 14 of the act is obviously not intended to be a limitation upon the Authority's power of eminent domain, but rather to make clear that the Authority and municipalities have the power to arrange privately for the transfer of municipal lands to the Authority 'without the necessity for any advertisement, order of court or other action or formality, other than the regular and formal action of the authorities concerned.'  *  *  *

The Legislature has broad and well established powers over municipalities, (*Stothers* v. *Martini,* 6 N.J. 560, 79 Atl. 2d 857 (Sup. Ct. 1951),) and its ability to provide for the superiority of the Authority over the City in the respects here involved is therefore beyond question."

The tenth, and final, objection concerns itself with the right of the commission to employ counsel under subsections 6(d) and (e) of the act. It is contended that these subsections violate section 1 of article V of the State constitution. Those sections authorize the commission to appoint assistant attorneys by and with the consent of the Attorney General and to retain special counsel subject to the approval of the Attorney General. It is expressly provided that such assistant attorneys and special counsel shall be under and subject to the control, direction and supervision of the Attorney General and shall serve only at his pleasure. This court has held that the establishment of the office of Attorney General, under section 1 of article V of our constitution, endowed that office with all of its common-law powers and duties. We have further held that neither the General Assembly nor the judiciary can deprive the Attorney General of any common-law power inherent in that office. An inherent power of the Attorney General is the exclusive prerogative of conducting the law business of the State, both in and out of the courts, except where the State constitution or a constitutional statute may provide otherwise. *Fergus* v. *Russel,* 270 Ill. 304; *Saxby* v. *Sonnemann,* 318 Ill. 600; *People ex rel. Barrett* v. *Finnegan,* 378 Ill. 387; *People ex rel. Trustees of University of Illinois* v. *Barrett,* 382 Ill. 321; *People ex rel. Elliott* v. *Covelli,* 415 Ill. 79.

In *Fergus* v. *Russel,* relied upon by the plaintiff, we held invalid certain appropriations to the Superintendent of Insurance purporting to authorize expenditures by him for "legal services" and "travelling expenses of attorneys." In that case the authority attempted to be conferred on

the Superintendent of Insurance was entirely independent of control in the Attorney General. We there recognized that, "there were other representatives of the crown in the courts at common law, but they were all subordinate to the Attorney General." And in *Saxby* v. *Sonnemann,* we pointed out that the multiplicity of duties of the Attorney General forbids personal attention to all of them and that the Attorney General may act through deputies or assistants in carrying out his duties.

Although it can be urged from a literal reading of these sections that the commission may select and fix the compensation of assistant attorneys or special counsel, such a construction would render them unconstitutional. We are not compelled to interpret the sections so literally that we must hold them unconstitutional. *People* v. *Adduci,* 412 Ill. 621.

In arriving at the true legal effect of the subsections objected to and the legislative intent they embody, it is important to note that section 12 of the act in express terms declares the Attorney General is the commission's attorney and legal adviser.

The proper construction of the act is that the commission, from the funds available to it, allocates so much money as is necessary to pay for necessary legal services. The function of the commission in making funds available for special counsel and attorneys is analogous to the function of the legislature in appropriating moneys to the Attorney General from the general revenues of the State. By the amount it appropriates and by the limitations of salary rates, the legislature, too, in a sense controls the appointment and the compensation of assistant Attorneys General. It is only in this sense that the commission can be said to appoint or fix compensation of special counsel or assistant attorneys. In harmony with our earlier holdings, the legislature intended that these special counsel and assistant attorneys be as much a part of the staff of the

Attorney General and subject to his control in all respects as are those assistants paid from the funds appropriated directly to him by the General Assembly. Even though attorneys and special counsel for the commission may perform legal services for the State, their right to do so exists only because they are subordinates of the Attorney General.

Moreover, neither section 1 of article V nor any other provision of the constitution inhibits the expenditure of revenue derived from highway tolls for the purpose of defraying the legal expenses incident to the construction, maintenance and operation of the toll highway system. Such legal expense may validly include the compensation of assistant attorneys or special counsel utilized by the Attorney General in discharging his duty as attorney for the commission. Under the provisions of the statute here considered, the Attorney General is fully recognized as the attorney and legal adviser of the commission and the assistant attorneys or special counsel are completely subordinate to him. By proper construction of these subsections we conclude they do not contravene section 1 of article V of the constitution. These provisions are a valid method of enabling the Attorney General to perform his legal functions as attorney for the commission in a manner harmonious with the overall design of the act that the cost of the toll highways, including legal expenses, be borne from revenue derived from the tolls collected for their use.

In summation, we find no valid constitutional objection to any of the provisions of this act. The judgment and decree of the circuit court of Sangamon County are in all respects affirmed.

*Judgment and decree affirmed.*