**William H. COMBS et al., Plaintiffs,**

v.

**The ILLINOIS STATE TOLL HIGHWAY COMMISSION et al., Defendants.**

No. 54 C 1895.

United States District Court,
N. D. Illinois, E. D.

Jan. 27, 1955.

John J. Yowell, Chicago, Ill., for plaintiffs.

Latham Castle, Atty. Gen. of Illinois, Werner W. Schroeder and Theodore W. Schroeder, Sp. Asst. Attys. Gen., for defendants.

Before SCHNACKENBERG, Circuit Judge, and IGOE and PERRY, District Judges.

SCHNACKENBERG, Circuit Judge.

This action has been heard pursuant to 28 U.S.C.A. § 2281 and § 2284.

Plaintiffs, who are respectively the owners of real estate situated in Cook, DuPage and Lake Counties, Illinois, by their complaint seek an injunction restraining the defendants, The Illinois State Toll Highway Commission and its members, and the attorney general of the state of Illinois, from taking any action by virtue of the Illinois Toll Highways act, approved July 13, 1953,[1] affecting the properties of plaintiffs and other persons similarly situated, upon the ground that said act is unconstitutional in that it permits the taking of said property without due process of law, in violation of section 1 of the fourteenth amendment to the constitution of the United States. The act provides for the construction, operation, regulation and maintenance of a system of toll highways, creates the commission, defendant herein, and defines its powers and duties.

The act provides, inter alia, that the commission shall prepare and submit to

1. Secs. 314a26 to 314a54, inclusive, Chap. 121, Ill.Rev.Stat.1953.

the governor of Illinois for his approval, preliminary plans showing the proposed location of the routes of the particular toll highway for which bonds are to be issued, designating the approximate point of the commencement and the termination of said routes and the municipalities to be afforded reasonable connections therewith and served thereby, and estimates of the cost thereof. It also provides that if the governor shall either approve or fail to disapprove such plans and estimates within thirty days after receipt thereof, the commission shall thereupon provide by resolution for the issuance of bonds as in said act provided. The complaint charges that defendants are about to construct what is to be known as the Tri-State toll road over and across the properties of plaintiffs and other persons, to acquire portions of said properties by eminent domain proceedings, and are about to issue and sell bonds to be paid out of revenues derived from such toll roads, which averments are substantially admitted by defendants' answer.

At a hearing upon the complaint and an answer thereto, the evidence offered by both parties was received.

█ The first ground for plaintiffs' contention that their constitutional rights will be violated is that no public hearings were either required by the act to be held or shown by the evidence to have been held by the commission prior to its determination of the locations or termini of the proposed routes for the Tri-State toll road.

It is clear that the act makes no express provision for public hearings. The evidence adduced shows that numerous complaints on this subject were received by the commission and replies thereto were made in various ways. It also shows that on several occasions some complainants and critics of the routes being considered by the commission were, when present, permitted to express their views either to the commission itself or to various staff members thereof, who reported these interviews to the commission. Persons who called at the office of the commission in Chicago, requesting information about the proposed routes, were given access to detailed maps which were there available. The evidence submitted by the respective parties forms a voluminous part of the record before us. It fails to show that the customary requirements for the calling of a public hearing, including the giving of public notice thereof, were ever complied with by the commission or, in fact, that any effort was ever made toward such compliance. Moreover what transpired on the few occasions when various members of the public were permitted to be present falls short of the essential elements of a public hearing. Those occasions were used more for a presentation by the commission than a reception by it of the views of those members of the public who were present. We do find, therefore, that there were no public hearings held.

Members of the commission and of its staff appeared at various meetings of organizations and explained the purposes of the commission. While the complaint charges that the defendants have kept secret the precise lines of a survey of the proposed new route, we find no evidence of any secretiveness in this respect.

The evidence shows that the proposed highway is to extend from the Indiana state line to the Wisconsin state line and traverse the area in Illinois lying between those state lines. It also shows that this highway would terminate at the Indiana state line at a point several miles south of where a toll highway about to be constructed by the state of Indiana will reach the same state line. The evidence fails to show that the terminus of the proposed highway at the Wisconsin state line will connect with any presently planned toll highway in Wisconsin.

The evidence further shows that the highway in question as it passes west of the city of Chicago will be several miles further from the Chicago city limits than would be a suggested route located on what is known as the River Road, and

that the commission has taken the position that the route it suggests is feasible and would be much less expensive to acquire than the River Road route, which decision they base upon the advice of their engineers, appraisers and lawyers.

Section 28 of the Act provides:

"§ 28. All determinations made by the Commission in the exercise of its discretionary powers with the approval of the Governor, if such approval is expressly required by the provisions of this Act, including, without limitation, with reference to the location and terminal points of any toll highway, or section thereof, constructed by it, the materials to be used in its construction, and the plans and specifications thereof, the tolls to be charged for the use thereof, and the letting of contracts for the construction of toll highways or any part thereof, or the sale of bonds to provide funds for the payment of the cost thereof, shall be conclusive and shall not be subject to review by the courts or by any administrative agency of the State."

■ The Illinois Supreme Court considered this act and stated that it could find no valid constitutional objection to it. People v. Illinois State Toll Highway Commission, 3 Ill.2d 218, 120 N.E.2d 35. Among other things, it held, 3 Ill.2d at page 232, 120 N.E.2d 35, that the functions delegated to this commission are administrative and ministerial, and are not legislative in their nature, and, that the delegation of such power to the commission by the legislature is valid. That determination cannot be questioned in this proceeding. State of Ohio ex rel. Bryant v. Akron Park District, 281 U.S. 74, at page 79, 50 S.Ct. 228, 74 L.Ed. 710, and Neblett v. Carpenter, 305 U.S. 297, at page 302, 59 S. Ct. 170, 83 L.Ed. 182. In the same case that Illinois court also held, 3 Ill.2d at page 233, 120 N.E.2d 35, that the provisions of section 28 making the commission's determinations in the area of its discretionary powers conclusive and not

subject to review, are limited to discretionary matters and that recourse to the courts is not denied where bad faith, fraud, corruption, manifest oppression or a clear abuse of discretion enters into the commission's determinations, and that the presence of any of these conditions will give ready access to the courts. It further held that the determinations of the commission can constitutionally be made conclusive so long as none of the above evils is present. In the case at bar it is admitted that none of these evils is present. Whether or not the act offends against the constitution of the state of Illinois is not for us to decide. That function is exclusively within the jurisdiction of the state courts. Whether or not the legislature was wise in passing the law or in enacting certain of its provisions is not for us to decide.

■ In view of the act's lack of requirement for public hearings and the act's provision that the commission's determinations are to be conclusive, as well as the relevant facts which we have herein set forth, would the threatened action of the commission against the property rights of plaintiffs be a violation of the due process clause of the fourteenth amendment to the constitution of the United States? That is the question before us.

Fortunately the United States Supreme Court has already, in a similar case, indicated the answer to that question. In Rindge Co. v. Los Angeles County, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186, it appears that the board of supervisors of Los Angeles county, without notice to the owners of certain ranch property, adopted resolutions declaring public interest and necessity required the construction of two highways and directed that condemnation proceedings be instituted for such purpose. One of the proposed highways, known as the "main road," was to commence at the eastern boundary of the ranch, where it connected with and formed a continuation of a much traveled public highway running along the shore of the Pacific Ocean, and was to extend lengthwise through the

ranch in a westerly direction to the Ventura county line, where it was to terminate within the boundaries of the ranch. The other road was to be a branch of the main road, extending to the northern boundary of the ranch, where it was to terminate. There were no connecting public roads either at the western termination of the main road or the northern termination of the branch road. Condemnation proceedings were instituted and were resisted by the ranch owners, who denied the county's right to condemn.

The act, under which the board was acting, provided that a resolution such as that which was passed, should be conclusive evidence of the public necessity for such improvement, that such improvement was necessary therefor, and that such improvement was located in the manner most compatible with the greatest public good and the least private injury.

The court struck out a special defense of the defendants which alleged that the main road would furnish no way of necessity or convenience for public use or travel. The ranch owners appealed from a judgment condemning their property ·for these highways and fixing their compensation and damages. The case finally reached the Supreme Court of the United States. That court, 262 U.S. at page 706, 43 S.Ct. at page 692, said:

"The ranch owners concede that a genuine highway, in fact adapted as a way of convenience or necessity for public use and travel, is a public use. Their real contention is that these particular roads, while called highways are 'highways' in name merely, that is, that they are shams under the name of public improvements, which cannot, in fact, furnish ways of convenience or necessity to the traveling public. This argument is based upon the fact that they extend through the ranch alone, the main road terminating within its boundaries, and connect with no other public roads at their western and northern ends. These roads will, however, be open to the general public to such extent as it can and may use them. The people to the eastward in Santa Monica, Los Angeles and other cities will have access to them and to the people living on the ranch through the connecting road from Santa Monica. The people living on the ranch will have egress over them. The people living north of the terminus of the crossroad, who now have no adequate outlet will have access to it through private roads and ways and may then travel over these two roads to Los Angeles and other cities for marketing produce and other purposes; and the people in these cities will have reciprocal access to them for purposes of trade and otherwise. It is not essential that the entire community, nor even any considerable portion, should directly enjoy or participate in an improvement in order to constitute a public use. Fallbrook Irrigation District v. Bradley, supra, 164 U.S. [112] 161, 17 S.Ct. 56, 41 L.Ed. 369. In like manner, if Ventura County should hereafter extend the main road to the western end of the ranch the people living beyond it, who now have no practical outlet, would be furnished a similar means of egress, with reciprocal ingress to them by the people living in the cities to the east. A highway can be legally laid out terminating at a state line even though there be no connecting highway in the adjoining State and no definite official action has been taken to establish such connecting highway; otherwise great ·embarrassment and difficulty would be experienced in establishing highways across state lines. Rice v. [Town of] Rindge, 53 N.H. 530, 531. So, as to county highways. Public road systems, it is manifest, must frequently be constructed in instalments, especially· where adjoining counties are involved. In determining whether the taking of property

is necessary for public use not only the present demands of the public, but those which may be fairly anticipated in the future, may be considered. Central Pacific Railway [Co.] v. Feldman, 152 Cal. 303, 309, 92 P. 849."

And, 262 U.S. at page 708, 43 S.Ct. at page 693, the court said:

"We necessarily accept, as a matter of state law, the holding of the District Court of Appeal that the proviso to section 1241 of the Code made the resolutions of the Board of Supervisors conclusive evidence as to the necessity of taking these particular highways and the other matters therein specified. So construed it was held by that court not to be objectionable to any provision of the State or Federal Constitutions. By this we are controlled so far as the provisions of the State Constitutions are concerned. Fallbrook Irrigation District v. Bradley, supra, 164 U.S. [at page] 155, 17 S.Ct. 56, 41 L.Ed. 369; Georgia Railway [& Power] v. Town of Decatur, 262 U.S. 432, 43 S.Ct. 613, 67 L.Ed. [1065] * * *. And so construed this statute is not in conflict with the Fourteenth Amendment, either because it fails to provide for a hearing by the landowners before such resolution is adopted, or otherwise. The necessity for appropriating private property for public use is not a judicial question. This power resides in the Legislature, and may either be exercised by the Legislature or delegated by it to public officers. 'Where the intended use is public, the necessity and expediency of the taking may be determined by such agency and in such mode as the State may designate. They are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment.' Bragg v. Weaver, 251 U.S. 57, 58, 40 S.Ct. 62, 64 L.Ed.

135. 'That the necessity and expediency of taking property for public use is a legislative and not a judicial question is not open to discussion. * * * Neither is it any longer open to question in this court that the Legislature may confer upon a municipality the authority to determine such necessity for itself. * * * The question is purely political, does not require a hearing, and is not the subject of judicial inquiry.' Joslin Mfg. Co. v. City of Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. [1167]".

The conclusion of the court, 262 U.S. at page 710, 43 S.Ct. at page 693 is as follows:

"We therefore conclude that the property of the ranch owners has been taken for highways constituting a public use authorized by law, and upon a public necessity for the taking duly established, and that they have not been deprived of their property in violation of the Fourteenth Amendment."

As far as we have been able to determine, the above quotations from Rindge Co. v. Los Angeles County have never been repudiated or limited by the United States Supreme Court. That decision is controlling here.

■ Even if, as plaintiffs claim, defendants, in exercising their delegated discretion in locating the routes and termini of toll roads, have made mistakes, in failing to have the proposed Illinois toll road meet a similar Indiana road at the state line, or otherwise, that fact is not a sufficient reason for a federal court to assume jurisdiction under the due process clause of the United States constitution. These public officials are human beings. To err is human. On the other hand, if they are guilty of improper action due, not merely to error of judgment, but to bad faith, fraud, corruption, manifest oppression or a clear abuse of discretion, the state courts are open to those whose rights are threatened, People v. Illinois State Toll High-

way Commission, 3 Ill.2d 218, 120 N.E. 2d 35. Therefore, in such circumstances also, no resort to the federal courts is permitted. In neither of these classes of cases is a federal question involved.

For the reasons above set forth, the prayer for an injunction is denied and the complaint is dismissed for want of equity. Counsel for defendants will present a decree accordingly.