(Nos. 33861, 33862 Cons.—

THE PEOPLE *ex rel.* Latham Castle, Attorney General, Petitioner, *vs.* ORVILLE TAYLOR, Respondent.—THE PEOPLE *ex rel.* E. R. HUMRICH, Petitioner, *vs.* THE ILLINOIS STATE TOLL HIGHWAY COMMISSION *et al.,* Respondents.

*Opinion filed December 2, 1955*

502

LATHAM CASTLE, Attorney General, of Springfield, WERNER W. SCHROEDER, GEORGE W. McGURN, JOHN P. MULVIHILL, and WILLIAM C. WINES, of counsel,) for petitioner in No. 33861; JACOB BLOOM, and GOLBERG, WEIGLE, MALLIN & RIVKIN, of Chicago, (MILTON MALLIN, and MAURICE S. WEIGLE, of counsel,) for petitioner in No. 33862.

JOHN S. MILLER, and CHARLES R. SPROWL, both of Chicago, for respondent in No. 33861; LATHAM CASTLE, Attorney General, of Springfield, (WERNER W. SCHROEDER, GEORGE W. McGURN, JOHN P. MULVIHILL, and WILLIAM C. WINES, of counsel,) for respondent in No. 33862.

Mr. JUSTICE DAVIS delivered the opinion of the court:

By leave of this court, two original petitions for *mandamus* have been filed which relate to the issuance of bonds to finance construction under the Illinois Toll Highway Act. (Ill. Rev. Stat. 1955, chap. 121, pars. 314a26 to 314a54.) Because they present a single issue, they have been consolidated for argument and decision.

The first petition (No. 33861), filed by the People of the State of Illinois on the relation of the Attorney General, seeks to compel the Secretary of the Illinois State Toll Highway Commission, Orville Taylor, to execute bonds in

conformity with the resolution of that body authorizing the issuance of a single series of bonds to finance the contemplated construction. The other petition (No. 33862) was filed by the People on the relation of E. R. Humrich, a taxpayer, to compel the Commission and the individual commissioners to expunge said resolution. The issues have been closed upon a motion to dismiss the petition in No. 33861 and upon a general and special demurrer to the petition in No. 33862.

The sole question may be simply stated: Does the Illinois Toll Highway Act authorize the issuance of a single series of bonds to finance the construction which the Commission proposes, or does it require the issuance of three separate series of bonds?

The Illinois State Toll Highway Commission was created by the Illinois Toll Highway Act, which was enacted in 1953. The constitutionality of this statute was upheld in *People* v. *Illinois Toll Highway Com.* 3 Ill. 2d 218.

The relevant facts, all of which are undisputed, disclose the following: On October 25, 1955, the Commission adopted a resolution authorizing a single series of bonds aggregating $415,000,000 to finance the construction of what is therein described as "The Northern Illinois Toll Highway" and which consists of three separate "routes." The first of these "routes," called the "Tri-State Route," extends from a point near the Indiana boundary south of Chicago along a route by-passing Chicago to a point near the Wisconsin border adjacent to the eastern boundary of Illinois. The second, called the "North Illinois Route," crosses the Tri-State Route at an angle of approximately 90 degrees and is a direct connection between Chicago, Rockford and Beloit. The third, called the "East-West Route," connects with the Tri-State Route, and is approximately parallel with the North Illinois Route for 128 miles, presently connecting Chicago with Aurora and ultimately

with Rock Island. The separate routes are connected in the sense that one may be able to travel from any point on one to any point on another.

Petitioner Humrich in No. 33862 contends that the Commission has no power to finance this construction by a single series of bonds. He relies primarily upon the following language in section 14 of the act: "Such bonds shall be issued in a separate series for each toll highway and bonds in each series shall be numbered consecutively." His position is that three toll highways, not one, are provided for, and that it is therefore mandatory that the financing be by three separate series of bonds. In No. 33861, Orville Taylor, Secretary of the Commission, has refused to sign the bonds upon substantially the same grounds.

The argument against the issuance of a single series of bonds focuses upon the above language of section 14. Read alone, and divorced from the rest of the statute, that language appears to support the view that a single issue of bonds to finance the contemplated construction is prohibited. The argument is buttressed by an asserted legislative purpose that each toll highway should be economically self-sustaining so that it may become a part of the system of free highways of the State as soon as the bonds and interest have been paid or provided for. Ill. Rev. Stat. 1955, chap. 121, par. 314a42.

It is axiomatic, however, that each provision of a statute must be construed in the light of the statute as a whole. (See, *e.g., People* v. *Handzik,* 410 Ill. 295, 302.) From an examination of the entire statute we are of the opinion that the construction urged upon us does not reflect the intention of the General Assembly.

The interpretation suggested is contradicted by other provisions of the Act. Section 11 refers specifically to the "route, or routes, of the particular toll highway for which the bonds are to be issued * * *." Section 14 provides that the bonds to be issued "shall be payable from revenues

derived from the operation of any one or more of the toll highways owned or operated by the Commission." That section also states that the bonds shall bear the following legend: "Both the principal, interest and premium if any of this bond and the series of which it forms a part are payable out of the revenues derived from the operation of the toll highways of the Commission for which this bond has been issued." By that section it is also provided that any resolution authorizing the issuance of bonds may include a provision for the issuance of additional bonds "for the completion or improvement of the toll highway or toll highways * * *" on a parity with the bonds originally issued. And the section refers to the issuance of bonds "for the construction of the toll highway or toll highways intended to be constructed out of the proceeds of said bonds * * *." These provisions make it clear, in our opinion, that the issuance of bonds to pay for the construction of more than one toll highway was authorized by the General Assembly. Certainly it was intended that a single toll highway might consist of more than one route, as does the proposed highway.

Apart from the intention thus manifested by a consideration of the entire statute, the sentence relied upon appears in a section dealing with mechanical aspects of the issuance of the bonds. The same section, for example, deals with interest rates, bond maturities, the time at which interest is to be payable and the circumstances under which the bonds may be redeemed. It authorizes facsimile signatures, provides that the bonds shall bear the seal of the Commission and contains numerous other detailed requirements relating to the issuance of the bonds. A provision of such substantial import as is here urged would hardly be found in this context, and in a sentence which also provides for consecutive numbering of the bonds to be issued.

A bill was introduced in the 1955 session of the General Assembly which would have amended the definition of

a toll highway to provide expressly that it might include "a highway consisting either of a single, separate, and independent route, or of two or more routes inter-connected by appropriate traffic interchanges, * * * approved for construction, financing and operation as a single project in one or more stages." This amendment was not adopted, and it is argued that by its failure to adopt the amendment the General Assembly made clear its intention that a separate series of bonds should be issued for each highway. The legislative action relied upon, however, is equally consistent with the view that the General Assembly considered that the existing statute made its intention sufficiently clear that amendment was unnecessary.

We conclude, therefore, that the action which the Commission has taken is authorized by the statute. It follows that the writ should issue in case No. 33861, and that the writ should be denied in case No. 33862.

*No. 33861, writ awarded;*
*No. 33862, writ denied.*