(No. 33925.—

THE PEOPLE *ex rel.* Latham Castle, Attorney General, Petitioner, *vs.* WARREN E. WRIGHT, State Treasurer, Respondent.

*Announced January 18, 1956—Opinion filed March 22, 1956—Rehearing denied May 22, 1956.*

SCHAEFER, J., and HERSHEY, C.J., dissenting.

LATHAM CASTLE, Attorney General, of Springfield, (WERNER W. SCHROEDER, GEORGE W. McGURN, JOHN P. MULVIHILL, and WILLIAM C. WINES, of counsel,) for petitioner.

WILLIAM J. KILEY, and HALFPENNY & HAHN, both of Chicago, (EDWIN S. D. BUTTERFIELD, of counsel,) for respondent.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The Attorney General has filed, pursuant to this court's leave, this original petition for *mandamus* against the State Treasurer to compel the latter officer (a) to receive and accept the northern Illinois toll highway revenue bonds, described in the said petition, from the Illinois State Toll Highway Commission; (b) to deliver said bonds to or upon the order of Glore, Forgan & Co. and Halsey, Stuart & Co., Inc., or any of their assignees or agents; and (c) to accept from said Glore, Forgan & Co. or Halsey, Stuart & Co., Inc., or their agents or assigns, the payment in cash for said northern Illinois toll highway bonds, at the purchase price provided for in the contract entered into between the said Toll Highway Commission and the said underwriters, and that summons issue herein as provided by law.

The State Treasurer has declined to deliver the bonds and to accept the purchase price thereof, assigning as the reason for his refusal that there is pending in the circuit court of Cook County an action by one Harold M. Quincer, an Illinois citizen and taxpayer, for a writ of *mandamus* against the Toll Highway Commission and its members, to compel those officers, *inter alia,* to rescind or expunge the resolution authorizing the issuance of the bonds and to

rescind the purchase contract with certain underwriters, and to compel the State Treasurer to refrain from receiving the bonds from the commission, from delivering them to the underwriters and from accepting any sums of money in payment for the bonds.

This court sustained the constitutionality of the statute involved in *People* v. *Illinois Toll Highway Com.* 3 Ill.2d 218, 120 N.E.2d 35, decided on May 24, 1954.

In early December, 1954, the commission announced that it would make an offering of bonds in January, 1955. On December 17, 1954, one Combs and others filed a suit against the Illinois Toll Highway Commission in the Federal court, which was tried before a Federal court of three judges. With the filing of this suit, the offer and issuance of the bonds was necessarily postponed because of the pendency of that litigation. Judgment against Combs and others was entered on February 9, 1955, based upon an opinion of the three-judge court. *Combs* v. *Illinois Toll Highway Com.* 128 Fed. Sup. 305.

No appeal was immediately taken from that decision. On March 7, 1955, prospective bidders met with representatives of the commission in New York to work out new plans for the offering for sale of said bonds. On the day of said meeting, Combs and others filed an appeal from the three-judge-court decision to the Supreme Court of the United States.

The appeal was disposed of in the United States Supreme Court by an affirmance on the ground that the Federal questions presented were so insubstantial as to require no further argument. (*Combs* v. *Illinois Toll Highway Com.* 349 U.S. 942.) A petition for rehearing was filed on June 3, 1955, and denied on July 6, 1955. 349 U.S. 969.

New cost and engineering studies were necessary and were completed in August, 1955, and the commission announced that it would on September 2, 1955, set a date for the offering and sale of the bonds. On August 31,

1955, Combs and others filed their motion in the Supreme Court of the United States for leave to file a second petition for rehearing. Again the offer of bonds was necessarily postponed. The motion to file the second petition for rehearing was denied (76 S. Ct. 40-1), on October 10, 1955.

After leave to file the second petition for rehearing was denied by the United States Supreme Court, the commission again announced that said bonds would be offered for sale on October 25, 1955. The day before said sale, a petition for writ of *mandamus* was filed in the circuit court of Cook County by one E. R. Humrich, as relator, acting in the capacity of a citizen and taxpayer of the State of Illinois and one interested in having the laws properly executed. While this *mandamus* proceeding was pending and undetermined in the circuit court of Cook County, a petition by the Attorney General for a writ of *mandamus* was filed in this court in the case of *People ex rel. Castle* v. *Taylor,* 7 Ill.2d 501, and the same Humrich was granted this court's leave to file a petition, similar to his petition then pending in the circuit court, asking (a) for a separate financing of the three routes, and (b) that the resolutions of October 25, 1955, (Nos. 13 and 14,) providing for an issue of bonds aggregating $415,000,000 be expunged. Both causes were heard in this court. A writ of *mandamus* was issued in the *Taylor case* but was denied in the case filed by Humrich as relator. In neither case was a petition for rehearing filed.

After the decision of this court above referred to, the petition of Humrich as relator was dismissed by the circuit court of Cook County on motion of respondents, and a final order of dismissal entered on December 7, 1955.

After the disposition of said causes in this court, and in obedience to its writ of *mandamus,* the bonds were signed and the date of delivery was set for December 21, 1955.

A few days before that date, namely, on December 15, 1955, one of the attorneys who had appeared in the circuit

court and in this court on behalf of relator Humrich filed another petition for writ of *mandamus* in the circuit court of Cook County with a different relator, the above-mentioned Harold M. Quincer, who is a resident of Boone County, and who brings his action as a citizen and taxpayer of the State of Illinois and one interested in having the laws properly executed. The Quincer petition again seeks the expunging of Resolution No. 14, authorizing the issuance, execution, authentication and delivery of the $415,000,000 northern Illinois toll highway revenue bonds above referred to and considered by this court in cases No. 33861 and 33862 decided at the November term of this court. (7 Ill.2d 501.) Said Resolution No. 14 specifically directs delivery of the bonds in compliance with the contract to Glore, Forgan & Co. and Halsey, Stuart & Co., Inc.

Because of the necessity of a nonlitigation certificate, it was impossible to make delivery on December 21, 1955.

The Quincer petition appears to be another chapter in a chronicle of litigation instigated by persons who, whether acting in concert or separately and each upon his own initiative, have made it their object to have some litigation pending at all times when the bonds might be offered for sale or might be ready for delivery to the prospective purchasers thereof.

The full text of the Quincer petition is before us.

The State Treasurer contends that the petition raises issues of law and fact, that he should not be compelled to accept the bonds from the commission, deliver them to the underwriters and receive the purchase price thereof until those issues have been adjudicated, and that the issues of fact proffered by the Quincer petition cannot be tried in this court without departure from our inveterate rule that this court does not try issues of fact in original *mandamus* or *habeas corpus* proceedings.

But the Attorney General replies and we hold that all of the issues, whether of law or of fact, tendered by Quin-

cer's petition either were or could have been litigated in the consolidated cases of the *People ex rel. Castle* v. *Taylor,* and *People ex rel. Humrich* v. *Toll Highway Commission,* 7 Ill.2d 501, decided at the November term of this court, and in the case of People *ex rel.* Humrich v. Toll Highway Commission, circuit court of Cook County No. 55C-16053. The two Humrich cases, cited above, that is, the original action for *mandamus* entertained by this court at the instance of Humrich and Humrich's similar action for a writ of *mandamus* in the circuit court of Cook County, sought the expunction of the resolutions authorizing the sale of the $415,000,000 worth of toll road bonds and sought judicial pronouncements of this court and the circuit court of Cook County that would invalidate the bonds should they be issued.

Quincer seeks the same relief as did Humrich. He asks the invalidation of the same resolution, and the same contract for the sale of bonds which was involved in the *Humrich case.* To be sure, Quincer asserts grounds and reasons for the relief that he prays different from those relied upon by Humrich.

But it is well settled in this State that the general principles of *res judicata* are applicable to suits brought by taxpayers, voters, or other residents of the State for the vindication of alleged public rights. In particular, this rule has been applied in litigation assailing the validity of public bonds. In *Harmon* v. *Auditor of Public Accounts,* 123 Ill. 122, certain resident property owners and taxpayers filed a suit attacking the validity of a proposed issue of county bonds. The "same indebtedness" had been attacked in a previous representative suit by certain "then resident property owners and taxpayers." But in the subsequent (Harmon) litigation, additional grounds were urged for the invalidity of the bonds. This court held, first, that the antecedent representative suit, although brought by different "residents and taxpayers," was conclusive upon the plain-

tiff in their subsequent or *Harmon* suit, and second, that the decree in the earlier case was *res judicata,* not only of the issues actually tendered by that case but of all issues that could have been raised. This court said at page 135: "As was said in *Preble* v. *Board of Supervisors, supra:* The complainants could not divide their cause of action, setting up one ground of illegality in that suit, and if they failed in that, bring a second suit for a like purpose, setting up another ground of illegality. They should have disclosed the entire wealth of their case at once." The court so held even though the plaintiffs in the *Harmon,* or second, *case* were not the same as the plaintiffs in the earlier case and even though the plaintiffs in the second case assign new grounds and reasons for invalidating the bond issue. As late as 1949 the *Harmon case* was followed in *People ex rel. Furlong* v. *Election Comrs.* 404 Ill. 326, although the vitality of the *Harmon case* was somewhat diluted by the fact that the questions determined in the *Furlong case* were identical with those previously decided in the case of *People ex rel. Lipsky* v. *City of Chicago,* 403 Ill. 134. The fiscal policies of the State or its subdivisions are not to be frustrated by a succession of suits by different taxpayers, voters or other citizens after one of such suits has been adjudicated. The doctrine of the *Harmon case* is particularly applicable where successive suits, such as those filed in connection with the toll road program, are for the purpose of delay and vexation.

In *People ex rel. Harrison* v. *Kelly,* 391 Ill. 136, this court, speaking of the discretion that controls the grant or denial of a writ of *mandamus,* said at pages 138-39: "In the exercise of its discretion, the court looks to existing facts and views the whole case with due regard to the consequences of its action. (*People* v. *Ketchum,* 72 Ill. 212.) In *People ex rel. Stettauer* v. *Olsen,* 215 Ill. 620, it was said: 'When a writ of *mandamus* is asked the court may inquire whether it will operate impartially, create

confusion and disorder, and whether it will or will not promote substantial justice. Courts, in the exercise of the discretion with which they are vested, may, in view of the consequences attendant on the issuing of a writ of *mandamus,* refuse the writ, though the petitioner has a clear legal right for which *mandamus* is a proper remedy.' See, also, *Michigan-Grand Building Corp.* v. *Barrett,* 35 Ill. 291 ; *People ex rel. Lyle* v. *City of Chicago,* 360 Ill. 25."

In *People* v. *Olsen,* 215 Ill. 620, this court held that a citizen or taxpayer could not defer a suit for *mandamus* with respect to the determination of a tax rate until so late a date that the issuance of the writ would be inimical to the public welfare. In that case the taxpayer delayed filing his suit until after a large portion of the taxes to be collected had been extended and tax warrants had been issued. We said at page 622: "The writ of *mandamus* is not a writ of right, and it was largely within the sound discretion of the trial court to refuse to issue it. When a writ of *mandamus* is asked the court may inquire whether it will operate impartially, create confusion and disorder, and whether it will or will not promote substantial justice. Courts, in the exercise of the discretion with which they are vested, may, in view of the consequences attendant on the issuing of a writ of *mandamus,* refuse the writ, though the petitioner has a clear legal right for which *mandamus* is a proper remedy. (*People* v. *Board of Supervisors,* 185 Ill. 288.) The court may act on existing facts and view the case with reference to the consequences of its action, (*People* v. *Ketchum,* 72 Ill. 212,) and may consider whether the petition has been presented to settle mere abstract rights, unaccompanied by practical or substantial benefits. *North* v. *Trustees of University of Illinois,* 137 Ill. 296; *People* v. *Masonic Benevolent Assn.* 98 id. 635." Under the facts in the case at bar, we find that a writ of *mandamus* should issue.

It is a common usage to provide in indentures con-

templating the sale of public bond issues that there shall not be any litigation pending which assails the validity of the bonds at the time of the consummation of the sale. It is likewise a custom in the sale of bonds for the treasurer or custodian of the fund of the governmental agency issuing such securities to deliver the bonds and give his receipts for the proceeds of the sale thereof. And this court will take judicial notice of such custom and usage. *Kile* v. *Town of Yellowhead,* 80 Ill. 208; *Munn* v. *Burch,* 25 Ill. 21.)

We take note of the respondent State Treasurer's assertion that he is "not a member of the Commission," which is true, and of his contention that he has "no legal duty to receive, accept and otherwise dispose of the Commission's bonds." Section 14 of the act provides that "The Commission shall have power, by resolution, to issue and sell bonds from time to time * * * to finance * * * the cost of the acquisition, purchase, construction * * * of any toll highway * * *." This section also provides that "The proceeds from the sale of said bonds shall be paid to the Treasurer of the State of Illinois as ex-officio Custodian." The latter part of that section contemplates that the commission shall by resolution provide for the sale and delivery of the bonds. (Ill. Rev. Stat. 1955, chap. 121, par. 314a39.) The act contains no specific provision directing the respondent to receive, accept and deliver the bonds, however, custom and usage would give rise to such expectation. And the commission assuming he would so act adopted certain resolutions to implement the provisions of the statute relative to the sale and delivery of the bonds.

The commission, by Resolution No. 13, section 2.16, directed as follows: "* * * said Bonds shall be delivered, by the Treasurer or on his order, to or upon the order of the purchasers named in said Supplemental Resolution or Resolutions, but only upon payment to the Treasurer of the proceeds of sale of such bonds." This resolution is

before this court, both by pleadings herein and by judicial notice.

By Resolution No. 14 (also before this court in the same manner), it is provided:

"Section 11. That the Continental Illinois National Bank and Trust Company of Chicago, as Trustee, be and it is hereby requested and directed to authenticate the Bonds, in the aggregate principal amount of $415,000,000, as provided by the Resolution, and deliver the same to or upon the order of the Treasurer for delivery to the purchasers thereof.

"Section 12. That, when the Purchase Contract shall have been executed and delivered, the Treasurer be and is hereby ordered to deliver the Bonds to or upon the order of Glore, Forgan & Co. and Halsey, Stuart & Co., Inc., on behalf of themselves and the other purchasers named in the Purchase Contract, upon payment of the purchase price therefor to the Treasurer, in accordance with the terms of the Purchase Contract."

The respondent now declines to participate with the commission in the sale and delivery of the bonds. There is authority in the commision to issue, sell and deliver the bonds, and we need not determine in this proceeding whether the respondent has the legal duty to so do. The act imposes a clear legal duty upon him to accept the proceeds from the sale of the bonds, and it is his duty to cooperate with, rather than to obstruct, the efforts of the commission in connection with the completion of the sale of the bonds. In order to accomplish this end we ordered that writ of *mandamus* issue directing the respondent:

"(1) To deliver to the Illinois State Toll Highway Commission the custody and control of $415,000,000 of the Illinois State Toll Highway revenue bonds, Series of 1955, if the same are in his actual custody; (2) to release unto the Toll Highway Commission any and all right that he

might have to the custody and control of the bonds in question, by virtue of the Toll Highway Act or any Resolutions enacted pursuant thereto; and (3) to receive from the Toll Highway Commission, in cash, the funds derived from the sale of said Toll Highway revenue bonds, in accordance with the terms of sale of such bonds as provided for in the purchase contract referred to in the petition for writ of mandamus herein. Opinion to follow."

We take judicial notice of the acute and ever increasing congestion of traffic upon the highways of the State and nation and of the ever mounting toll of injuries and deaths that are due to that congestion. The necessity for consummating the program enacted by the Toll Highways Act is urgent. If countenanced by this court, the Quincer suit and other litigation that would doubtlessly follow, so obviously motivated by a desire to obstruct and harass, would serve only to delay progress and thwart a road building program that is so essential to the convenience and safety of millions.

Therefore, it is the State Treasurer's duty to obey the writ heretofore issued in accordance with the court's judgment.

*Writ awarded.*

Mr. Justice Schaefer, dissenting:

It seems to me that in its eagerness to reach a result which it considers desirable, the majority has disregarded settled principles and overridden the rights of litigants.

The case is decided upon the ground that the issues it presents have already been adjudicated. The issues in this case have not, of course, ever been actually determined by any court, nor was the respondent in this case a party to the previous actions which are said to have adjudicated these issues. Under the normal operation of the doctrine of *res judicata*, therefore, the parties and the issues in this case would not be affected by the result of the earlier actions. For its extension of the normal boundaries of *res judicata*

in this case, the majority relies upon *Harmon* v. *Auditor of Public Accounts,* 123 Ill. 122.

In the *Harmon case* this court held that certain contentions advanced by a taxpayer could not be raised because they had been presented by the pleadings in an earlier suit filed by another taxpayer, and could have been determined in the earlier proceeding. That the doctrine of the *Harmon case* is not applicable here is made clear by our decision in *Johnson* v. *Daley,* 403 Ill. 338. We there held that although certain sections of the Cigarette Tax Act had been held valid in *Routt* v. *Barrett,* 396 Ill. 322, which was a taxpayer's suit, the decision in that case did not bar another taxpayer from challenging the validity of certain other provisions of the Cigarette Tax Act, because his contentions were not within the issues framed by the pleadings in the *Routt case.*

In *Johnson* v. *Daley* we said of the *Harmon case:* "In a previous suit certain taxpayers had unsuccessfully sought to enjoin a town and its officers from issuing certain bonds. The *Harmon case* was a bill seeking to enjoin the town officials from collecting taxes to pay the principal and interest thereof, and praying that they be decreed to be null and void. In the latter suit an additional ground was advanced for attacking the validity of the election authorizing their issue. We there held that the former decree was 'conclusive as to all questions *within the issue* whether formally litigated or not.' In that opinion, we pointed out that 'the point now raised against the bonds was presented by the pleadings and issues in the Pinckney suit (*Chicago and Iowa Railroad Co.* v. *Pinckney,* 74 Ill. 277) and might have been raised and determined in that suit.' In *Routt* v. *Barrett,* on the other hand, the constitutionality of the present clause in section 1 of the Cigarette Tax Act was not presented by the pleadings and issues, and could not have been litigated." 403 Ill. at 340-341.

So in this case, the issues presented are not within the

issues framed in the earlier cases in which they are said to have been adjudicated. A reading of the opinion in *People ex rel. Castle* v. *Taylor,* and *People ex rel. Humrich* v. *Illinois State Toll Highway Com.* 7 Ill.2d 501, and reading of the pleadings in *People ex rel. Humrich* v. *Illinois State Toll Highway Com.,* circuit court of Cook County No. 55C—16053, makes it clear that the sole question raised in those cases was this: "Does the Illinois Toll Highway Act authorize the issuance of a single series of bonds to finance the construction which the Commission proposes, or does it require the issuance of three separate series of bonds?" 7 Ill.2d 503.

One of the cases relied upon as an adjudication of the merits of this case is *People ex rel. Humrich* v. *Illinois State Toll Highway Commission,* No. 55C-16053, in the circuit court of Cook County. At the suggestion of the attorneys for the Commission, and in an effort to cooperate to secure speedy determination of the case, the relator abandoned his action in the circuit court and refiled it in this court as an original action. In this court it was consolidated with *People ex rel. Castle* v. *Taylor,* and both cases were decided together. The only decision on the merits was that rendered by this court in the consolidated cases, which appears at 7 Ill.2d 501. As has been stated, that case involved a single issue of law.

This case presents entirely different issues. They are not mentioned in the majority opinion, and therefore it is necessary to describe some of them briefly here. For example, the Quincer petition, which was incorporated in the pleadings in this case, alleges that Glore, Forgan & Co. and Halsey, Stuart and Co., the contract purchasers of the bonds, had been previously appointed to advise the Toll Highway Commission with respect to the terms and conditions that were to be incorporated in the bonds ultimately offered for sale. It alleges that they therefore stood in a

fiduciary relationship to the Commission and to the people of the State of Illinois, and were thereby precluded from becoming interested, directly or indirectly, in the purchase of the bonds. Similarly, the State Treasurer alleges that the managing underwriters imposed a secret condition precedent to their offer, that the commission should concurrently with the delivery of the bonds, purchase $30,000,000 in specified bonds from a designated insurance Company, with the result that the sale of $30,000,000 of toll highway bonds was actually a trade rather than the sale for cash required by the statute.

Whether the truth of these charges could ultimately be established is of no significance in the decision of this case. What is important is that they involve issues of fact. It has long been settled, for adequate reasons that need not be restated here, that this court does not take jurisdiction of an original action which presents issues of fact. (See, for example, *People ex rel. Jones* v. *Robinson,* 409 Ill. 553; *Monroe* v. *Collins,* 393 Ill. 553.) This court thus has no jurisdiction to determine the issues presented in this case. Moreover, it had no jurisdiction to determine those issues in any earlier action. The net of it is that litigants are deprived of their day in court on the ground that the issues which they seek to raise have been decided against them in an action to which they were not parties, in a case which did not present the issues they seek to raise, and by the judgment of a court which lacked jurisdiction to decide those issues.

Mr. CHIEF JUSTICE HERSHEY concurs in the foregoing dissenting opinion.