(No. 4801— )

EDWIN S. D. BUTTERFIELD, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 24, 1961.*

*Concurring opinion filed March 24, 1961.*

EDWIN S. D. BUTTERFIELD, Claimant, pro se.

WILLIAM G. CLARK, Attorney General, for Respondent.

WHAM, J.

Claimant, Edwin S. D. Butterfield, seeks to recover $6,000.00 as the alleged unpaid balance of $7,500.00 for legal services rendered to State Treasurer Warren E. Wright in defense of the cause of the People ex rel Latham Castle, Attorney General, Petitioner, vs. Warren E. Wright, State Treasurer, Respondent, No. 33925, being an original petition in mandamus filed in the Supreme Court of the State of Illinois, the decision of which is reported in 8 Ill. 2d 454.

Respondent, although filing no answer to the complaint, resists the payment of this claim on the following grounds:

1. That claimant was not retained by Warren E. Wright as his attorney.

2. That claimant has been paid for his services.

3. That, even if retained by Warren E. Wright, the obligation for his fees is the personal obligation of Warren E. Wright and not the State of Illinois.

4. The fee claimed is not reasonable under the circumstances.

5. That, even if Warren E. Wright had authority to retain attorneys to represent him in his official capacity in said suit, his authority as Treasurer to

contract for legal services was limited to the availability of unexpended funds in the State Treasurer's appropriations, and when said funds were expended, as they were, no additional funds can be paid for said services.

Claimant testified as follows: On January 2, 1956 he received a call from attorney Harold Halfpenny, representing Warren E. Wright, and was asked if he would be willing to represent Mr. Wright in a mandamus proceeding that the Attorney General intended to file against him. On the 3rd of January claimant met with Warren E. Wright, William J. Kiley and Harold Halfpenny in the office of Harold Halfpenny in Chicago. There, Mr. Kiley, assistant to Mr. Wright, asked Mr. Wright "Do you want me to represent you, or do you want Mr. Halfpenny to represent you, or do you want all three of us to represent you?", to which Mr. Wright replied, "I would rather have all three of you."

Claimant immediately began preparation for the defense of said suit, which, among other things, consisted of preparing a motion to dismiss the petition for an original writ of mandamus, argument and brief in support of answer; and petition for rehearing, upon each of which pleadings William J. Kiley and Halfpenny and Hahn are designated as attorneys for Warren E. Wright, and claimant is designated "of counsel."

Upon denial of the petition for rehearing on April 4, 1956, claimant testified that he submitted his statement for services rendered to Warren E. Wright in the sum of $7,500.00, dated April 12, 1956, and offered a copy of it in evidence as claimant's exhibit No. 3 after service on respondent of a demand to produce the original statement. Exhibit No. 3 was admitted in evidence after counsel for respondent informed the Commissioner that the original statement could not be found. Exhibit No. 3 reads as follows:

"EDWIN S. D. BUTTERFIELD
111 West Washington Street
Chicago 2, Illinois

Hon. Warren E. Wright
State Treasurer
State of Illinois
State Capitol Bldg.
Springfield, Illinois

To services rendered as counsel for State Treasurer under letter of instruction from the Attorney General of the State of Illinois refusing to represent the State Treasurer in the preparation and presentation of defense to petition for original writ of mandamus brought by the Attorney General of the State of Illinois against the State Treasurer, including conferences with State Treasurer, his attorneys and aides, the Attorney General and his aides, and special counsel. Examination of pleadings and proceedings in State Toll Road litigation and conferences with counsel thereon, examination of authorities and precedents and petition for leave to file petition for original writ, preparation of legal memoranda, motion to strike, and brief and argument, conference with Clerk of the Supreme Court, serving notices, filing motion to strike and accepting service of summons, examination of response of relator to motion to strike, examination of petition of amicus curiae, objections thereof, and rulings of court thereon, preparation of answer to petition for writ and brief and argument in support thereof, supervising printing, serving notices and filing answer and brief, examination of motion of Attorney General to strike answer, preparation of response to motion to strike answer, preparation of response to motion to strike answer and brief and argument in support thereof, serving notices, telegraphing clerk of Supreme Court, and filing with Clerk of the Supreme Court response to motion to strike answer of the Attorney General, conferences with Clerk of Supreme Court in re: filing of pleadings and order of Supreme Court on issuance of writ and limitations, delivering letter to and conference with Attorney General in re: performance of duties of Treasurer under provisions of writ, conference with Attorney General and his aides in re: form of receipt, release and bond, drafting and sending telegrams of withdrawal of offer to New York Life Ins. Co. in re: purchase of $30,000,000.00 in U. S. Treasury obligations, participation in the supervision of delivery of receipt, release and bond to Toll Highway Commission of $411,541,666.67 in cash to the State Treasurer, and including services rendered during two trips to Springfield, Illinois . . . . . $7,500.00."

He has received no payment on this statement, but did receive $1,500.00 from Halfpenny and Hahn, who had received payment in full of their statement submitted to Warren E. Wright, dated November 9, 1956, which statement was admitted in evidence as respondent's exhibit No. 5, and reads as follows:

"Warren E. Wright November 9, 1956
State Treasurer
Capitol Building
Springfield, Illinois

IN ACCOUNT WITH
HALFPENNY AND HAHN
Attorneys at Law
111 West Washington Street
Chicago 2, Illinois

IN RE: People of the State of Illinois ex rel, Latham Castle, as Attorney
General of the State of Illinois,

vs.

Warren E. Wright, as Treasurer of the State of Illinois and ex
officio custodian of the funds of the Illinois State Highway Com-
mission, No. 55925, Illinois Supreme Court.

Legal services rendered in regard to motions, answers and briefs of
Warren E. Wright in the above entitled mandamus suit in the
Illinois Supreme Court, conferences, checking and approving
various documents for the transfer of funds to the State
Treasurer _____$ 3,500.00
Legal services as associate counsel of Edwin S. D. Butterfield in
the above entitled matter pursuant to previous invoices_____ 1,500.00
Monies advanced:
Long distance telephone calls _____$ 17.10
Travel, meals, hotel expenses, trips to Springfield_____ 118.25
Court costs _____ _____ 15.22
Photostats and reproductions _____ 37.50
 _____
 $188.07 188.07
 _____
 $5,188.07"

Claimant also acknowledged that the expenses he incurred in going to Springfield and all other items of expense were paid to him by the firm of Halfpenny and Hahn.

William J. Kiley, one of the attorneys representing Warren E. Wright and his administrative assistant, was called as a witness by claimant, and testified as follows: On December 28 or 29, 1955, Mr. Wright informed him of the contemplated action by the Attorney General. On January 3, 1956, Mr. Wright and he went to the office of Harold Halfpenny where they met with Mr. Halfpenny,

Mr. Butterfield, the claimant, and he believes Russell Morris, son-in-law of Mr. Wright.

The proceedings were discussed, and he, William J. Kiley, asked the question as to who was going to represent Warren E. Wright. The words he remembers using were "Do you want me to represent you? Do you want Mr. Butterfield? Do you want any combination, or do you want all of us? Mr. Wright's reply was that he felt we would make a good team, and he would like to have us all work on the case."

This witness worked with claimant and Mr. Halfpenny, and submitted no statement for services to Warren E. Wright. He accompanied claimant to a conference with Mr. Wright in Springfield regarding payment of fees sometime at the end of March or in April of 1956. During the discussion Mr. Wright said that, as far as he was concerned, he saw nothing within his budget to warrant the payment of attorneys' fees, that he wanted to see them paid, but he didn't know how he could do it.

Also pertaining to this witness' testimony, claimant's exhibit No. 2 was admitted without objection by respondent. It is a letter from Mr. Kiley to the Attorney General in response to a request for information. It reads as follows:

"Dear General Castle:

This will acknowledge receipt of your letter of November 20, 1958 relating to the above claim.

I was one of the attorneys of record in the above case, and was present on January 3, 1956 when Warren E. Wright, who was at that time Treasurer of the State of Illinois, employed myself, Mr. Harold Halfpenny, and Edwin S. D. Butterfield, the claimant herein, to represent said Warren E. Wright as State Treasurer in the mandamus procedure, which was in the process of being filed by the Attorney General against the State Treasurer in the Supreme Court of the State of Illinois.

I personally worked with Mr. Butterfield during the entire proceeding relating to this matter. We, as you know, were working under pressure, since this was an important and serious matter, and time was of the essence.

Mr. Butterfield and myself worked almost every day and evening, including Saturdays and Sundays, on this matter to the exclusion of our regular practice while this proceeding was pending before the Supreme Court of Illinois.

You undoubtedly are familiar with the motions, pleadings and briefs that we prepared and filed in this proceeding.

I have read the petition for attorneys' fees filed by Mr. Butterfield and the exhibits attached thereto filed with the Court of Claims, and have also reviewed my files in this matter.

It is my opinion, based on the above, that the matters contained in Mr. Butterfield's petition are substantially correct.

It is my further opinion, this being based on personal knowledge of this litigation, and the services performed by Mr. Butterfield therein, that the amount requested for attorneys' fees by Mr. Butterfield is a reasonable minimum for his services in this proceeding.

Should you desire any additional information from me pertaining to this matter, please advise, and I will be glad to forward same to you.

> Sincerely yours,
> William T. Kiley"

Respondent called Harold T. Halfpenny as a witness. He testified that he was called by Warren E. Wright on New Year's Day, 1956, and discussed the pending suit with him, and made arrangements to confer the next day in Mr. Halfpenny's office.

The claimant, Butterfield, had space in Halfpenny and Hahn's office, and had worked with that firm on occasions.

He further testified that claimant was interested in the toll road situation, and that he called him at his home, and told him that Warren E. Wright had talked to him, Halfpenny, about representing him. Mr. Halfpenny then asked claimant if he would be interested in the case, and, if so, to come down and talk it over, which he did.

Mr. Halfpenny stated that he was present at the January 3 meeting, but did not recall hearing Mr. Wright state that he would like to have claimant work with Mr. Halfpenny and Mr. Kiley. He, Mr. Halfpenny, had always represented Mr. Wright, and agreed to represent him in the case. He further stated that he had discussed other counsel with Mr. Wright prior to the meeting of

January 3. Mr. Wright had asked whether he, Halfpenny, could work with Mr. Kiley, to which the witness replied that he would be very happy to work with Mr. Kiley, and that "we were going to have Mr. Butterfield work with us also."

He further stated that, after claimant had rendered his statement to Warren E. Wright, a discussion was had between Mr. Halfpenny and Mr. Butterfield concerning it. Mr. Halfpenny's testimony regarding this conversation is as follows: "I told him at the time that we were in charge of the litigation, and that we would try to work out something in the way of a fee, that I felt the figure he had sent was, under the circumstances, that he probably was entitled to the amount, but in the realities of Mr. Wright's position as Treasurer and his future, and the problem that was involved, that I felt that we had to do it kind of as a public service, and that we couldn't expect to get paid for what we were ordinarily entitled to, and that I would work something out with Mr. Wright over the period of the year that we would get paid, and whatever we received he would receive one-third of it, and that was done." Mr. Halfpenny further testified as follows: "Mr. Wright's position on this was that Mr. Butterfield was in this by our firm, and, at the time this discussion was going on, that he thought it was our obligation to pay his fee."

Also pertaining to this witness' testimony is respondent's exhibit No. 8 admitted without objection by claimant, which exhibit is a letter from the witness, Harold Halfpenny, to the Attorney General in response to a written inquiry from the Attorney General. It reads as follows:

"Dear Sir:

This will acknowledge receipt of your letter of November 20 in regard to the above entitled matter, enclosing copy of petition filed by Edwin

S. D. Butterfield in the Court of Claims, State of Illinois, for legal services rendered concerning the case of People ex rel Latham Castle, Attorney General, vs. Warren E. Wright, State Treasurer, in which you requested any information I may have pertaining to the validity of Mr. Butterfield's claim.

Please be advised that Mr. Warren Wright did not retain the services of Edwin S. D. Butterfield in this matter. However, we engaged Mr. Butterfield as associate counsel, and paid him the sum of $1,500.00 for his services.

I have no desire to enter into a controversy as to whether his claim for $7,500.00 is fair and reasonable for services rendered, as it was our feeling that we were entitled to a very substantial fee for the services rendered in this matter; but at the time the Attorney General indicated that he would not allow the payment of such fees.

If there is anything further that you desire in regard to this matter, feel free to communicate with me.

Very truly yours,
/s/ Harold Halfpenny"

He further testified that their bill was paid on December 12, 1956, and that there had been discussion throughout the year in regard to fees, that the problem was whether anyone could be paid. In the fall of 1956 the Attorney General rendered an opinion to the Treasurer, which was admitted in evidence as respondent's exhibit No. 5-E, and which reads as follows:

"Dear Sir:

I reply to your inquiry as to whether the fees that you incurred in defending in your official capacity the case of *People* vs. *Warren Wright*, 8 Ill. (2d) 454, may be paid from appropriations to the State Treasurer's office.

As appears from the Supreme Court's opinion above cited, that case was an action against you in your official, not in your private, capacity as State Treasurer to compel you to take action in that capacity to effect the sale of toll road highway bonds.

That the questions raised by you and your counsel were substantial appears from the fact that arguments in your behalf elicited two dissents from the Supreme Court.

Ordinarily, State officials must be defended only by the Attorney General and his assistants. *Fergus* vs. *Russel*, 270 Ill. 304; *People* vs. *Toll Highway Commission*, 3 Ill. (2d) 218, and authorities collected and discussed in that case, at page 236. But, in the above mentioned litigation, the Attorney General conceived it to be his duty to appear for the relator, a conception that was approved by the Supreme Court's decision in that case. He could, therefore, not appear as your counsel.

If the State Treasurer, under these circumstances, had been powerless to employ counsel, the State itself would have been deprived of the important right of obtaining a binding decision of the highest court.

The action of the State Treasurer in this case was not a willful one nor a violation of the duties. He was entitled to receive the guidance of the court of last resort, and the welfare of the State itself depended on his obtaining such a decision.

Under these facts, it appears inevitable that the State Treasurer was compelled to employ counsel. It is my opinion that the Supreme Court would hold that under these conditions the State Treasurer would be authorized to employ an attorney, and necessarily it follows that he is authorized to pay him out of any available appropriation to the State Treasurer's office.

It is, therefore, my opinion that the State Treasurer, out of the funds appropriated for the conduct of his office, may pay the counsel, who represented him in the case of *People* vs. *Wright*, 8 Ill. (2d) 454. To hold otherwise would be to disable the State in the performance of its necessary governmental functions, and would deprive public officials in cases such as this of the right to resort to the courts for a binding determination of vitally important matters. It cannot be believed that the law of our State could be so construed as to make submission to the courts impossible in circumstances such as this.

> Yours truly,
> /s/ Latham Castle
> Attorney General"

At the time the Attorney General's opinion was given, the maximum amount available in the Treasurer's appropriation for payment of legal fees and expenses was the amount of the statement rendered by Halfpenny and Hahn, namely, $5,188.07, which statement was prepared, submitted and paid.

It is apparent from the above that the evidence is in conflict on the point of whether or not claimant was to look to Warren E. Wright and the State, or to Harold Halfpenny and his firm for his fees.

As claimant points out, his testimony regarding the conversation of January 3, 1956 with Warren Wright is not directly contradicted by Mr. Halfpenny. Mr. Halfpenny, who was present, stated that he did not recall hearing that portion of the conversation. Mr. Halfpenny was under the impression that he was in charge of the litigation, and that it was his responsibility to bill the client and pay claimant.

Warren E. Wright was not called as a witness by either claimant or respondent. He was out of town on

the date of the hearing, and neither party moved for a continuance.

From the evidence before us, we find that claimant was hired by Warren E. Wright as Treasurer of the State of Illinois. Although Mr. Halfpenny was under the impression that claimant was brought into the case by him, the significant fact is that claimant was requested by Mr. Wright to perform legal services on his behalf in conducting the defense of the case.

Apparently claimant had good reason for understanding such to be the case, inasmuch as Mr. Kiley, the administrative assistant of Mr. Wright, also had the same understanding. Claimant rendered the services, and forwarded his statement to Mr. Wright while under this impression.

The conversation with Mr. Wright from which this understanding was gained was such as to lead a reasonable person to believe that his services were requested by Mr. Wright, and that a fair fee would be paid for those services. This establishes a direct hiring, regardless of what Mr. Halfpenny understood Mr. Wright to have intended. Respondent contends that claimant's designation as "of counsel" on the briefs is inconsistent with and precludes him. We do not agree. This designation has nothing to do with who is to pay an attorney's fee. In many instances it is applied to the particular lawyer, who prepares the briefs and presents the matter to the court.

It is all a matter of agreement as to who is to pay an attorney's fee whether the lawyer be designated "of counsel" or something else.

Respondent contends that Mr. Wright had no right to contract for these services at the State's expense. The Attorney General could not represent him as State Treasurer, inasmuch as the Attorney General had commenced

the action against him. Mr. Wright was informed of this prior to hiring claimant, and claimant's exhibit No. 4, a letter dated January 9, 1956, from the Attorney General to Mr. Wright, confirmed the fact that the Attorney General could not represent him.

Ordinarily, the State Treasurer would be required to look only to the Attorney General for representation in any matter involving the State Treasurer in his official capacity. *Fergus* vs. *Russel,* 270 Ill. 304.

It was the Attorney General's opinion, however, as expressed in his letter dated September 11, 1956, being respondent's exhibit No. 5-E, that, because of the situation presented, the State Treasurer would be authorized to employ an attorney to represent him in the matter, and pay the attorney's fee from any available appropriation to the Treasurer's office.

We agree with the Attorney General's opinion. A State officer, charged with the responsibility of administering his office as a public trust for the people of Illinois, is under an obligation to defend such an action as this in which he is involved in his official capacity, and which concerns matters affecting the welfare of the State of Illinois.

If the Attorney General advises that he is unable to appear on behalf of such State officer because of a conflict of interest, then the State officer must necessarily resort to other counsel of his own choosing in order to properly defend such an action.

The reasonable attorney's fees in such an instance should be at the State's expense rather than the expense of the State officer, since ordinarily the Attorney General would perform these services at no expense to the State officer in the absence of such conflict.

We have examined the briefs and opinions of People ex rel Latham Castle, Attorney General vs. Warren E.

Wright, and have concluded from such examinations that Warren E. Wright, as State Treasurer, was obligated to appear by counsel in his official capacity, and under the circumstances was entitled to engage counsel of his own choosing at the expense of the State of Illinois.

With respect to the amount of the fee, claimant testified that he expended approximately 240 hours in performing the required legal services involved, for which services he rendered his statement in the amount of $7,500.00. Three attorneys, namely, William J. Kiley, Harold Halfpenny, and John J. Yowell, a past president of the Chicago Bar Association, in addition to claimant, testified that his fees were reasonable for the matters and time involved.

Evidence to the effect that the amount of the fee was excessive was the testimony of respondent's witness, George W. McGurn, Assistant Attorney General, who participated in the litigation of People ex rel vs. Wright. His opinion was that the fee should be "somewhere in the neighborhood of $3,700.00."

We have examined and considered all of the evidence on the question, the opinion of the Supreme Court, and the briefs filed therein on behalf of Warren E. Wright, and have arrived at what we feel is a fair and reasonable amount. We are not bound by the opinion evidence offered by either party, although we have considered it in arriving at our decision. In our judgment a fair and reasonable fee for the legal services rendered by claimant is $5,500.00. He has already received $1,500.00 on account. He is, therefore, entitled to an additional $4,000.00.

Respondent next contends that claimant's acceptance of the $1,500.00 check from Halfpenny and Hahn constituted payment in full for his services. The evidence on this point is that Halfpenny and Hahn delivered the

check to a creditor of claimant, and that claimant is willing to consider it a part payment of the fee due him from the State. He did not know that Halfpenny and Hahn had submitted their statement to the Treasurer, or the amount of the statement, until after it was done and the money paid.

At no time did claimant give any indication of withdrawing his statement for attorney's fees submitted in April, 1956. We find no sufficient evidence in the record to establish this as an acceptance by claimant as payment in full of his fee.

Lastly, respondent contends that the authority of Mr. Wright as State Treasurer to contract for legal services was limited to the availability of unexpended funds in the State Treasurer's appropriation, and that the payment of the Halfpenny and Hahn bill exhausted the amount, which could be paid, and, therefore, no further amount is available for payment to claimant, even if he is entitled to it.

Respondent relies on the Statutes and Constitutional provisions, which prohibit State officials from contracting indebtedness against the State in excess of the amount appropriated by the Legislature. This case, however, is not in violation of these. Here we have a situation where neither Mr. Wright nor the Legislature could anticipate the necessity of his defending an action brought against him in his official capacity by the Attorney General, who ordinarily would represent him. The Attorney General himself recognized the necessity for Mr. Wright to employ counsel at public expense, although in his opinion, respondent's exhibit No. 5-E, went only so far as to state that Mr. Wright could pay the fees out of available appropriations. Although Mr. Wright could pay no more funds than were in his unexpended appropriations, we do not believe that the power to incur legal fees should

be limited to the available and unexpended appropriations. Since Mr. Wright was entitled to defend this action in his capacity as State Treasurer by counsel of his own choice, he had the authority to retain attorneys to represent him until the action was concluded, irrespective of the status of his appropriations.

Under the law, as we see it, Warren E. Wright, as State Treasurer, had express authority to defend this action by counsel of his choice, even though it meant incurring an indebtedness against the State of Illinois for reasonable attorneys' fees that exceeded his appropriations.

Therefore, the amount yet due claimant in the sum of $4,000.00 is a valid claim, and should be paid. The claim is hereby allowed in the amount of $4,000.00.

CONCURRING OPINION

TOLSON, C. J.

Respondent has urged that any award made in this case would violate the Constitution, which prohibits State officials from contracting an indebtedness in excess of the amount appropriated by the Legislature. This rule of law was announced in *Fergus* vs. *Brady,* 277 Ill. 272, and, of course, would be a complete bar to the claim, if, in fact, there was no appropriation made by the Legislature to pay such a claim.

The Court will take judicial notice of the fact that in 1955 the Legislature made an appropriation for the office of the Treasurer of the State of Illinois for the biennium. We have found from the evidence that on January 3, 1956 the State Treasurer engaged the services of claimant, and, on that date, there remained in his appropriation the following sums:

1. Contingent Fund ..............$ 20,000.00
2. Contractual Fund .............. 103,235.74

We have previously held in the case of *Schutte* and *Koerting, Et Al,* (Consolidated Cases) vs. *State of Illinois,* 22 C.C.R. 591, that a claim would be allowed if at the time of the contract there were sufficient funds remaining unexpended in the proper appropriation to pay for the same.

In the light of this evidence, it is apparent that the State Treasurer was obliged to secure separate counsel, as the Attorney General was unable to represent him. There were sufficient funds in the contractual account, and, if need be, funds could have been transferred from the contingent fund to pay this claim. An award should be made in this case.