MARY ANN F. McNULTY *et al.*, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs-Appellants, v. ILLINOIS STATE TOLL HIGHWAY AUTHORITY *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—91—3490

Opinion filed September 25, 1992.

---

Ronald L. Futterman, of Futterman & Howard, Chartered, of Chicago, and Robert J. Meyers, of Winnetka, for appellants.

Roland W. Burris, Attorney General, of Springfield (Dan K. Webb and Lawrence R. Desideri, both of Winston & Strawn, of Chicago, and Frank M. Howard, of Oak Brook, Special Assistant Attorneys General, and Gary M. Griffin, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Mary Ann F. McNulty, Eugene F. Dupee, Jr., Stephen Graham, Stuart K. Jones, Michael J. Hoesley, and Richard T. Hough, brought a class action suit on behalf of certain users of the Northern Illinois Toll Highway (NITH) against defendants, the Illinois State Toll

Highway Authority (the Authority) and Myron F. Weil, chairman of the board of directors, Thomas H. Morsch, Jr., executive director, and Jerry Cosentino, Treasurer of the State of Illinois. (The case was never certified to proceed as a class action.) Plaintiffs' complaint alleged that the Authority failed to fix and adjust tolls at the lowest possible rate thereby unlawfully accumulating and withholding a surplus fund of $74 million; that the Authority wrongfully diverted and misappropriated the NITH surplus to pay construction costs on a new and separate tollway (the North-South); and also violated plaintiffs' civil rights under 42 U.S.C. §1983 (1988). Plaintiffs appeal the trial court's dismissal of counts I, II and VI of the second amended complaint for failure to state a cause of action.

We adduce the following background from the affidavits, pleadings and documents filed. In 1953, the Illinois State Toll Highway Commission (Commission) was established to provide for the construction, regulation, and maintenance of a toll highway or a system of toll highways to accommodate the travelling public through and within the State of Illinois. At the time the NITH commenced operations in 1958, it consisted of three toll highways, which included the Tri-State, the Northwest, and the East-West toll highways. These three toll highways total 256 miles and are connected by interchanges so that vehicles can travel on the various highways without leaving the system.

In order to finance the construction of the NITH, revenue bonds were sold in a total amount of $415 million. The Illinois Toll Highway Act (Act) (Ill. Rev. Stat. 1953, ch. 121, par. 314a26 *et seq.*) empowered the Commission to fix and revise tolls or charges for the privilege of using the toll highway. The tolls were to be fixed and adjusted to provide a fund *at least sufficient* to pay the cost of: (1) maintaining, repairing, regulating and operating the toll highway, and (2) the bonds and interest thereof and all sinking fund requirements. The original Act contemplated that when the bonds were paid off and funds escrowed for future maintenance, the NITH would be operated free of tolls and the Commission would be dissolved.

On August 5, 1969, section 15 (currently section 19) of the Act was amended to provide that "tolls shall be so fixed and adjusted at the *lowest possible rate*" to provide funds sufficient to pay the cost of maintaining, repairing, regulating and operating the toll highway, including only the necessary expenses of the Commission, the bonds and interest thereof and all sinking fund requirements. (Emphasis added.) Ill. Rev. Stat. 1983, ch. 121, par. 100—19.

In July 1984 the Illinois Senate issued a joint resolution authorizing the Authority to expand the Illinois toll highway system to include a North-South toll highway, which consisted of a 17-mile road between Army Trail Road and Bolingbrook. The legislature concurrently amended several provisions of the Act. That portion of section 32 which had previously disallowed the Authority from pledging the revenues produced by the present toll highways for any purpose in relation to any other toll highway was deleted from the Act. Section 21 of the Act was amended to provide that only when all bonds and "all interest" are paid does the toll highway become part of the State highway system. (Previously, the Act provided that the toll highways in existence prior to 1977 would become part of the State highway system when all bonds and interest on only those toll highways were paid.) Consequently, toll revenues collected after August 15, 1984, could be used to pay principal and interest on bonds issued for any purpose with respect to the NITH bonds as well as the bonds issued to construct the North-South toll highway.

The North-South toll highway was financed through the sale of $400,825,000 of revenue bonds sold on October 1, 1986. The new highway was constructed, substantially paid for and began operating on December 27, 1989.

On September 27, 1989, the Illinois Auditor General (Auditor) published an audit for the year ending December 31, 1988. In the report, the Auditor found that the Authority "may not be charging the lowest possible toll rate as statutorily required" and that named authorized uses do not include new construction on the North-South toll highway.

On December 15, 1989, plaintiffs filed a one-count complaint, alleging that the Authority was violating the Act by using revenues from the first three toll highways to pay for the new construction on the North-South toll highway. The complaint was subsequently amended with two new counts not at issue in this appeal. Defendant filed a motion to dismiss plaintiffs' complaint. During the pendency of that motion, the legislature again amended section 19(c) of the Act on August 10, 1990, to provide:

> "[T]olls shall be so fixed and adjusted at *rates* calculated to provide the *lowest reasonable toll* rates that will provide funds sufficient with other revenues of the Authority to pay, (a) the cost of the construction of a toll highway authorized by joint resolution of the General Assembly *** and the reconstruction, major repairs or improvements of toll highways ***.

Among other matters, this amendatory Act *** is intended to clarify and confirm the prior intent of the General Assembly to allow toll revenues from the toll highway system to be used to pay a portion of the cost of the construction of the North-South Toll Highway ***." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 121, par. 100—19.

Plaintiffs filed a second amended complaint containing six counts. In count I, plaintiffs alleged that defendants violated the Act prior to August 15, 1984, by accumulating and withholding a fund of surplus NITH toll revenues which totaled at least $74 million, failed to apply the fund toward a reduction of the NITH toll rates and to fix and adjust tolls on the NITH at the lowest possible rate. Plaintiffs sought the following relief: a declaration that the fund of surplus NITH tolls be held in a constructive trust for the benefit of plaintiffs and the class; an account for surplus tolls illegally withheld and/or subsequently diverted; and that defendants reduce the NITH rate schedule.

In count II, plaintiffs contended that defendants violated the Act between August 15, 1984, and August 10, 1990, by wrongfully diverting surplus NITH toll revenues collected prior to August 10, 1990 (at least $81 million), to pay construction costs on the North-South toll highway. In count VI, plaintiffs alleged that they were deprived of their property rights to the lowest possible rate without due process, in violation of 42 U.S.C. §1983 (1988).

The trial court dismissed plaintiffs' complaint, finding the unlawful diversion of funds allegation to be illogical, and because it would ultimately increase the costs of toll roads to all users. The judge determined that the North-South extension must be viewed as an "integral part of the total system of toll roads and not as a collection of individual roads with individual groups of users" because the total system approach most accurately reflected legislative intent. Further, the court found that the Authority's use of funds from the surplus rather than a series of bond issues contributed to lower toll rates by virtue of the fact that the Commission need not be subject to the vagaries of the financial bond market. The trial court dismissed counts I and II. (Count VI was premised upon violations of counts I and II; as such, plaintiffs concede that it is no longer viable if counts I and II are dismissed.)

It is well established that a cause of action should be dismissed on the pleadings only if it is clearly apparent that no set of facts can be proved which will entitle the plaintiff to recover. (*DiBenedetto v. Flora Township* (1991), 219 Ill. App. 3d 1091, 580 N.E.2d 647.) When the legal sufficiency of a complaint is challenged by a section 2—615

(Ill. Rev. Stat. 1991, ch. 110, par. 2—615) motion to strike or dismiss, all well-pleaded facts in the complaint must be taken as true, and "a reviewing court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted." *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 505, 565 N.E.2d 654.

■ Plaintiffs first contend that the trial court erred in dismissing count I, since after section 19 was amended in August 1969, the Authority was obligated to fix and adjust tolls at the "lowest possible rate" to cover costs, and no longer had the right to accumulate excess tolls or surplus. Plaintiffs rely upon *Morton Arboretum v. Thompson* (N.D. Ill. 1984), 605 F. Supp. 486, 491, in which the district court recognized that pursuant to section 19, the Authority had the statutory duty to keep tolls "at the lowest level necessary for discharge of Authority's obligations, thus preventing a surplus build up."

We find that plaintiffs' reliance upon *Morton Arboretum* is misplaced, because section 19 of the Act, as amended in 1969, expressly permits the Authority to provide for the accumulation of tolls and revenues for the payment of certain authorized costs. As previously set forth, section 19 states that the Authority shall fix and adjust tolls at the lowest possible rate "that will provide funds sufficient *** to pay *** the cost of maintaining, repairing, regulating and operating the toll highways including *** other requirements provided by resolutions." (Ill. Rev. Stat. 1991, ch. 121, par. 100—19.) Thus, it was within the purview of the statute that funds would be held in a general reserve to cover the considerable operating expenses of a toll highway spanning 256 miles. In addition, the Act also expressly provides for other requirements provided by joint resolution, such as the joint resolution passed in July 1984 authorizing the inclusion of the North-South toll highway into the present system.

More importantly, however, plaintiffs have failed to provide any factual support for their conclusive allegations that the surplus tolls were improperly collected, or that they were diverted for any unauthorized purpose. Indeed, plaintiffs' failure to state the manner in which the surplus funds were wrongfully withheld or used is conspicuous by its absence. The mere assertion that surplus tolls "unlawfully withheld and/or diverted have been unlawfully commingled with other funds" is insufficient in itself to support a cause of action. A pleader is required to set out the ultimate facts that support his cause of action (*Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 520 N.E.2d 37; *People ex rel. Scott v. College Hills Corp.*

(1982), 91 Ill. 2d 138, 435 N.E.2d 463), and legal conclusions unsupported by allegations of specific facts are insufficient. Our supreme court has consistently held that "a complaint which does not allege facts, the existence of which are necessary to enable a plaintiff to recover[,] does not state a cause of action and that such deficiency may not be cured by liberal construction or argument." (*People ex rel. Kucharski v. Loop Mortgage Co.* (1969), 43 Ill. 2d 150, 152, 251 N.E.2d 211.) Plaintiffs have failed to identify or demonstrate any improper or unauthorized purpose for which the tolls were used. Accordingly, the mere existence of a $74 million surplus in a general reserve account, without more, is insufficient to constitute a violation of the Act.

We also note that section 32 of the Act (Ill. Rev. Stat. 1983, ch. 121, par. 100—32) explicitly states:

"All determinations made by the Authority in the exercise of its discretionary powers, with the approval of the Governor if such approval is expressly required by the provisions of this Act, including without iimitation *** the tolls to be charged for the use [of the tollway] *** shall be conclusive and shall not be subject to review by the courts or by any administrative agency of the State."

In *Hammerman v. Illinois State Toll Highway Authority* (1986), 148 Ill. App. 3d 259, 498 N.E.2d 795, this court dismissed an action alleging mismanagement of funds by the tollway authority and unconstitutional dual taxation of motorists. In *Hammerman*, the court noted that such actions challenging the amount of the tolls charged and seeking a refund thereof are impermissible absent the presence of bad faith, fraud, corruption, manifest oppression or a clear abuse of discretion. (See also *People v. Illinois Toll Highway Comm'n* (1954), 3 Ill. 2d 218, 120 N.E.2d 35.) Again, plaintiffs have failed to specifically state the presence of any such factors to indicate that defendants abused their discretion in accruing the $74 million surplus.

While plaintiffs' briefs contain several other arguments in support of their position that count I states a cognizable claim that should be sustained, we need not consider those issues in view of our finding that plaintiffs have failed to demonstrate with particularity the method in which the surplus funds were allegedly wrongfully diverted or misappropriated, or the presence of any unlawful action on the part of defendants.

■ Plaintiffs also raise several related arguments pertaining to count II, which alleges that defendants violated section 19 of the Act in effect from August 15, 1984, through August 15, 1990, by using

the purported surplus tolls accrued from the three existing toll highways to pay for a portion of construction and land acquisition costs on the North-South. Plaintiffs rely upon the Auditor's report, which states that defendants were in violation of the 1984 Act by using toll revenues to pay for the new construction on the North-South toll highway. We are unpersuaded by plaintiffs' arguments, since the Act clearly states that it was within the public interest to provide for the construction and operation of a "toll highway or a system of toll highways." Ill. Rev. Stat. 1989, ch. 121, par. 100—1. See also *People ex rel. Castle v. Taylor* (1955), 7 Ill. 2d 501, 131 N.E.2d 108 (wherein our supreme court determined prior to the time that the original toll highway was completed it was intended that a single toll highway might consist of more than one route).

In 1984, the joint resolution issued by the Illinois Senate to include the North-South toll highway was accompanied by several legislative amendments to insure that the new road was fully integrated into the existing toll highway. Section 32, which prohibited the Authority from pledging the revenues produced by the present toll highway for any other purpose in relation to any other toll highway, was deleted from the Act. Too, section 21 was amended to provide that a toll highway would not be incorporated into the State highway system until such time that *all* bonds and interest were paid. Most significantly, we look to the express language of the amendatory Act passed on August 10, 1990, which clearly states that its intent was to clarify and confirm "the prior intent of the General Assembly to allow toll revenues from the toll highway system to be used to pay a portion of the cost of the construction of the North-South Toll Highway." Ill. Rev. Stat. 1991, ch. 121, par. 100—19.

It is well established that the fundamental principle of statutory construction is to give effect to the intent of the legislature. (*American Country Insurance Co. v. Wilcoxon* (1989), 127 Ill. 2d 230, 537 N.E.2d 284; *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 485 N.E.2d 1076; *In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 478 N.E.2d 326; *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 473 N.E.2d 1313.) Courts should first look to the statutory language as the best indication of the intent of the drafters. (*County of Du Page*, 109 Ill. 2d 143, 485 N.E.2d 1076; *People v. Boykin* (1983), 94 Ill. 2d 138, 445 N.E.2d 1174.) An amendment to a statute is an appropriate source for determining the legislative intent. *People v. Rink* (1983), 97 Ill. 2d 533, 455 N.E.2d 64.

In the present case, such unequivocal language as found in the amendatory Act of 1990 supports only one conclusion: that the legislature fully intended that tolls and revenues collected from the existing highway system could be applied to construction and land acquisition costs for the North-South toll highway. Accordingly, we find that the trial court properly dismissed count II for failure to state a cause of action.

In view of our affirmation of the trial court's dismissal of counts I and II, count VI, which is premised upon plaintiffs' establishment of a right of property from which due process has been wrongfully denied, must necessarily fall.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and RAKOWSKI, J., concur.